[Civ. No. 5608. First Appellate District, Division Two.—July 28, 1928.]

RICHARD WILKINSON, Respondent, v. BOOR SINGH, Appellant.

338

John S. De Lancey and Clarence De Lancey for Appellant.

Joseph L. Fainer and Leo Collins for Respondent.

PRESTON (H. L.), P. J., *pro tem.*—This is an appeal by the defendant Boor Singh from a judgment entered against him upon a verdict of a jury in the sum of $2,500, and reduced to $1,500.

This case is between a canine breeder and a Hindu fortune teller.

The record in this case establishes beyond question the truth of the old adage that it is impossible for two families to live under the same roof in peace and harmony, especially when one insists upon having their dogs reside with them.

In September, 1924, Ernest Lum, a Chinaman, owned a building at 2290 East Fourteenth Street, in San Leandro, California, used as a dance-hall. The respondent Richard Wilkinson and his twenty-seven dogs lived in a small building adjoining the Lum property. The appellant Boor Singh called at respondent's dog kennel some time about the last of September or the first of October, 1924, and asked respondent who owned the building at 2290 East Fourteenth Street. Thereupon appellant and respondent went to see Mr. Lum, who resides in Oakland, and on this visit appellant claims to have rented the property from Lum for $60 a month, beginning November 1, 1924, but, according to the testimony of respondent, Lum gave the keys to him and told him that he was to look after the property and also to look after the appellant while he occupied the building. Respondent also claims to have had before this time permission from Lum to occupy the kitchen and rear portion of the building.

On or about November 1, 1924, appellant and his wife moved their furniture and paraphernalia into the dance-hall, or front room of said building, cleaned up the room, placed their alluring and attractive signs on the front of the building and otherwise put the place in order to reap a rich harvest from the gullible public by reading their palms. On the next day after appellant and his wife moved into the front part of the building, respondent and his twenty-seven dogs took possession of the kitchen, rear end of the building, back yard, garage, etc. There is nothing in the record to show that appellant made any objection to respondent and his dogs occupying the kitchen, etc., when respondent first moved in; but, on the contrary, appellant and respondent seem to have been on friendly terms, for appellant gave a "Grand Opening Dance" and respondent assisted in receiving the guests and in serving them "hot dogs" and coffee.

Appellant and his wife continued to conduct their business in the front room and respondent continued to live and breed dogs in the kitchen and back yard until December 12, 1924. Respondent never paid any rent, either to appellant

or to Lum. On December 12, 1924, at about the hour of 2 o'clock P. M., and while respondent and about seven of his dogs were living contentedly in the kitchen of the building, appellant entered the kitchen in a very angry mood with a large hammer in his hand and told respondent that he and his dogs must immediately vacate the premises. Respondent refused to accede to this request, whereupon appellant immediately flew into a violent rage and knocked down the small partition in the kitchen, and threw the partition, together with all of respondent's furniture, into the back yard. The furniture included a piano, which appellant's wife assisted in removing into the back yard. After appellant had removed all of respondent's belongings from the kitchen, he then proceeded to the garage in the back yard and there knocked off the hinges of the door and released about twenty more dogs which were confined in the garage; then appellant proceeded to the fence surrounding the back yard and knocked off several boards, and the dogs made hasty departures in all directions. Appellant consumed about two hours in raising havoc with respondent's furniture and dogs, during which time respondent made little or no resistance, but contented himself by running to and fro through the building, tearing his hair and calling upon the Lord and the law for assistance. After the turmoil had subsided, and the dogs had taken refuge in near-by alleys and back yards, respondent succeeded in getting the constable to the scene of the trouble, and the constable, in company with the respondent, interviewed the appellant, and he admitted doing all of the things hereinabove related, but contended that he had leased the entire building and that respondent had no right or authority in said building or in any portion thereof. Respondent, after considerable search and inquiry, finally recovered all the dogs except two—one male dog weighing about two and a half pounds named "Tip," and another small female dog named "Fay."

On February 10, 1925, the respondent commenced this action for damages, alleging that he was entitled to the possession of the kitchen and rear portion of said premises, and that the entry of defendant was forcible, unlawful, malicious and without consent of plaintiff, etc.; that by reason of said eviction he was forced to, and did, sleep in an outbuilding used as a dog kennel situate in the rear of

said premises, and was thereby greatly humiliated and was caused great and grievous mental suffering and anguish, by reason of which he was damaged in the sum of $1,000. The complaint also alleged that by the removal of the furniture plaintiff was damaged in the further sum of $175, and further alleged that by reason of the acts of defendant the two dogs above mentioned, "Tip" and "Fay," were lost and were of the value of $4,000. The complaint further alleged that said two dogs were irreplaceable and that by reason of the deprivation of being able to enter them in contests the reputation of plaintiff as a breeder of dogs has been injured and damaged in the sum of $1,000, and further alleged that by reason of said defendant's malicious, unlawful, and wilful acts, said plaintiff has suffered damage in the further sum of $5,000, and prayed for a total judgment in the sum of $11,175. The defendant answered, denying all the material allegations of the complaint, and also filed a cross-complaint, asking for rent at the rate of $25 per month from December 12, 1924, for the premises occupied by plaintiff and his dogs.

The jury did not separate the damages, but returned a general verdict assessing plaintiff's damages at $2,500.

The appellant first contends that the verdict is not supported by the evidence. It will, therefore, be necessary to make a brief reference to the evidence on the question of damages.

The only evidence in the record relative to the value of the furniture is that given by the respondent himself, which is as follows: "Q. I will ask you what damage was done to your furniture by the removal by Mr. Boor Singh? A. Well, the piano was broke up and all the other things were stolen. They was not put quietly down in the back yard; they was thrown right out violently in the back yard at 2 o'clock. . . . Q. Did you lose any articles by this throwing out? A. No, I didn't lose only what was broken up. . . . Q. You allege you were damaged in the sum of $175.00, because of the removal of this furniture, is that right? Mr. De Lancey: Object to the question as incompetent, irrelevant and immaterial and no way proving damages, and as calling for the conclusion of the witness. The Court: You have not told us what furniture was put outside. A. All the carpet was ripped up, it was not pulled up

proper, it was just ripped up and thrown outside. The piano was thrown outside and the chairs and the pictures and all of that. All the canned stuff I was going to use for the lunch counter and all that, all wasted away.''

From this testimony it is clear that there is no evidence whatever as to the value of the furniture, either before or after it was thrown out into the back yard, and no evidence of any damage to it.

No evidence was offered in support of plaintiff's claim that his reputation as a breeder of dogs had been impaired.

The evidence does not show, nor can it be inferred from any testimony in the record, that plaintiff was compelled to sleep in the kennel with the dogs, or that he suffered any humiliation by so doing, but, on the contrary, it appears that he slept with the dogs from choice. Before the eviction he was sleeping with the dogs in the kitchen. We fail to see why it would be any more humiliating to sleep in the kennel with the dogs than to sleep in the kitchen with them.

The only testimony in the record as to the market value of ''Tip'' and ''Fay,'' the two dogs that were not recovered, was offered by appellant, which was that ''Tip'' could be easily replaced for $35. There is no direct evidence that the dog ''Fay'' had any market value, but it could probably be inferred from all the testimony in the case that she also had a market value of $35. Respondent offered no evidence as to their market or reasonable value, but only introduced testimony as to the earning ability of the dog ''Tip,'' which was that during the breeding season of 1924, he received for the services of ''Tip'' approximately $25 per week. Under this evidence, the measure of damages is the price for which two other dogs, equal in value to ''Tip'' and ''Fay,'' could be bought for in the market in Oakland or San Leandro, California, which would be not exceeding $70. (Sec. 3554, Civ. Code.)

Appellant contends that no damages can be awarded respondent for being violently ejected from the building for the reason that respondent never attempted to regain possession of the premises.

It is true, as contended by appellant, that the cases of *Brawley* v. *Risdon Iron Works,* 38 Cal. 676, and *Edwards* v. *Bodkin,* 43 Cal. App. 405 [185 Pac. 423], hold that in an action of forcible entry or forcible detainer, the substance

of the recovery, when the plaintiff is successful in the action, is the possession of the premises, and that damages for forcible entry or detainer are not awarded unless the plaintiff recovers the possession of the premises in controversy, but it must be remembered that this is an action, among other things, for *damages for forcible eviction,* and respondent has not sought to gain possession of the premises under a summary proceeding provided for in cases of forcible entry and detainer. *The implied finding of the jury is to the effect that respondent was entitled to the possession of the premises at the time of the forcible eviction, and, as we have seen, the evidence is sufficient to sustain this implied finding of the jury.* Of course, if the jury had found that respondent was not entitled to any damages by reason of the eviction, then it would have been an implied finding that *he was not entitled to the possession of the property.* We think there is a clear distinction between the rule laid down in the two cases cited by appellant and the case at bar. Certainly, respondent would not have to resort to a separate suit and have the court award him possession of the premises before he could maintain this action for damages for this unlawful and malicious eviction.

It is next contended by appellant that the court erred in giving certain instructions on the measure of damages.

A careful examination of all the instructions given satisfies us that the trial court fully and correctly instructed the jury upon all phases of the law applicable to the case, with one possible exception, and that is this: The court instructed the jury that the measure of damages for the loss or destruction of personal property, if it had no market value and was more particularly valuable to the owner than anyone else, was its particular value to the owner. This instruction was, no doubt, intended to apply to the value of the dogs, but, as we have seen, the evidence shows that said dogs did have a market value; therefore, there was no evidence in the record upon which this instruction could have been based, and should not have been given. The giving of this instruction, however, did not, in our opinion, affect any of the substantial rights of appellant. It was harmless error. This court is required by section 475 of the Code of Civil Procedure to disregard any improper in-

struction which, in our opinion, did not affect the substantial rights of the parties, and not to reverse any judgment by reason of any instruction, error or ruling, unless it shall appear to us that by such instruction, error or ruling, the appellant sustained or suffered substantial injury, and that a different result would have been probable, if such instruction, error or ruling had not occurred. It is also provided that there shall be no presumption that error is prejudicial or that injury is done if error is shown.

Lastly, appellant contends that the damages are excessive.

As above stated, the jury rendered a general verdict, assessing the damages at $2,500. A motion for a new trial was made upon several grounds, among them being excessive damages appearing to have been given under the influence of passion or prejudice (subd. 5, sec. 657, Code Civ. Proc.), and the trial court made the following order. ''The motion for a new trial in the above entitled cause having been heretofore argued and submitted to the court for decision, comes now the court and orders that a new trial be granted, unless plaintiff shall within five days in writing remit all the judgment in excess of $1500.00 but if plaintiff shall remit the sum of $1,000 from the judgment within five days, then and in that event the said motion for a new trial will be denied.'' This order was complied with and the judgment reduced to $1,500.

The evidence shows respondent's damage to be $70 for loss of the two dogs, ''Tip'' and ''Fay''; no other actual damage was proved. Therefore, if the judgment of $1,500 can be sustained at all, it must be upon the theory that $1,430 of said judgment was for exemplary or punitive damages. The respondent, in the prayer of his complaint, did not expressly ask for exemplary damages, but he did allege in the body of his complaint that all the acts charged against appellant were *unlawfully, wilfully and maliciously committed*. There was no demurrer of any kind interposed to the complaint. The court instructed the jury on exemplary damages, and the evidence is ample to sustain the implied finding of the jury that appellant's acts were extremely wanton and malicious.

Under all these facts and circumstances, we think the jury was fully warranted in rendering a judgment, including punitive damages (sec. 3294, Civ. Code; 8 Cal. Jur.

892), but the amount allowed for punitive damages is about twenty times the amount of the actual damages proved. We fully appreciate the fact that there is no hard-and-fast rule fixing the proportion between actual and exemplary damages in cases where exemplary damages are recoverable. It has, however, been repeatedly held that exemplary damages should bear a reasonable proportion to the actual damages sustained and the discretion of the jury and trial court are not unlimited in this matter. (*Flannery* v. *Wood,* 32 Tex. Civ. App. 250 [73 S. W. 1072] ; *Plotnik* v. *Rosenberg,* 55 Cal. App. 408 [203 Pac. 438].)

■ We think the judgment in the case at bar, even after being reduced to $1,500 by the trial court, is still greatly excessive. To award $1,430 punitive damages when only $70 actual damages is proved, is, in our judgment, out of all proportion to the actual damages sustained, and should not be permitted to stand.

The power of this court to set aside a verdict for exemplary damages is the same power, and exercised upon the same principle, as in any case of excessive verdict. (*Plotnik* v. *Rosenberg, supra.*)

We have concluded that the judgment in this case should be reversed and the case remanded for a new trial, unless the respondent .shall, within 20 days from the date of the filing of this opinion, file in this court a *remittitur* of all damages in excess of $370, plus costs if the said *remittitur* be filed, the judgment then to be modified in accordance therewith and, as so modified, affirmed.

It is so ordered.

Nourse, J., and Sturtevant, J., concurred.

The court on August 17, 1928, filed the following supplemental opinion herein:

THE COURT.—The opinion and decision of this court in the above-entitled cause having been rendered on July 28, 1928, the final paragraph thereof reading as follows: "We have concluded that the judgment in this case should be reversed and the case remanded for a new trial, unless the respondent shall, within twenty days from the date of the filing of this opinion, file in this court a *remittitur* of all

damages in excess of $370, plus costs if the said *remittitur* be filed, the judgment then to be modified in accordance therewith and, as so modified, affirmed. It is so ordered,'' and it appearing that respondent filed herein on August 16, 1928, *remittitur* of damages in excess of $370, plus costs, the judgment is modified in accordance therewith and as so modified is affirmed, respondent to recover his costs on this appeal.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 27, 1928, and again on October 15, 1928, after reconsidering the petition *de novo*.

All the Justices concurred.