[Civ. No. 3642. Third Appellate District.—January 29, 1929.]

JOHN H. LINDSEY, etc., Respondent, v. WILLIAM P. BUTTE et al., Appellants.

Page, Nolan, Rohe & Freston and Andrew J. Copp, Jr., for Appellants.

William A. Barnhill and Lewinson & Barnhill for Respondent.

FINCH, P. J.—The plaintiff was given judgment against all the defendants for the sum of $6,000 as damages for the conversion of an automobile and the further sum of $250 as compensation for time and money expended in pursuit of the automobile. There are two appeals from the judgment; one by the defendant Hellman Commercial Trust and Savings Bank and the other by defendants Butte, Barker, and Pacific Ready-Cut Homes, Inc.

October 19, 1923, the plaintiff and E. L. Butler entered into a conditional sale contract, in the usual form, by the terms of which the former agreed to purchase from the latter a Duesenberg automobile for $5,000, of which sum $2,000 was paid at the execution of the contract and the balance of $3,000 was to be paid in ten equal monthly installments, commencing November 19, 1923. The contract contained the following:

"Time is of the essence of this contract, and acceptance by the seller of any payment after same is due shall not constitute a waiver by him of this provision. . . .

"Said purchaser agrees that he will not and has no right to asssign, pledge, mortgage or otherwise dispose of this contract or said automobile, . . . or in any manner relinquish or lose control thereof, . . . without the written consent of said seller. . . .

"If said purchaser defaults in any of the above payments, when due, or breaches any provision of this contract, or if said automobile is attached or levied upon under any writ or process of any court, . . . said seller may, at his option,—First—take possession of said automobile . . . with or without process of law; and all payments theretofore paid here-

under shall thereupon be forfeited to said seller for the use wear, tear and depreciation of said automobile, and this contract and the purchaser's rights in and to said automobile shall thereupon cease, . . . or,—Second—said seller may declare the whole of the sums then remaining unpaid to be immediately due and payable and sue therefor.''

There is testimony showing the facts enumerated herein. Both parties to the contract were automobile dealers in Los Angeles. The automobile was immediately delivered to the plaintiff. Butler immediately sold and assigned the contract to the defendant bank for the amount of the unpaid installments. The bank mailed notice to the plaintiff of the assignment, but the plaintiff testified that he did not receive the notice and that he had no knowledge of the bank's ownership of the contract until April 22, 1924; that ''Mr. Butler told me he had simply put it in there as collateral security for a loan. . . . Mr. Hellman was supposed to be his backer in the automobile business and had financed his money to pay for the automobiles he purchased, and it was understood, I was told by him that it was simply put up as collateral security for the money that Mr. Hellman advanced him.'' Butler testified: ''I think my office made collections from Mr. Lindsey of the payments due under the contract. . . . I paid them to the Hellman bank. . . . During March, 1924, I owed Mr. Lindsey a little money. I think I owed him $400 and some odd.'' The officer of the defendant bank who had ''charge of the automobile department'' testified that when payments were not made promptly on automobile contracts assigned to the bank, ''it was customary for us to wait a few days—after which the payment was charged up to the dealer or strenuous efforts were made to collect it from the dealer''; that it ''is the custom of the bank to go after the dealer who turned the contract over'' to the bank ''and tell him to get after the purchaser and get the money in''; that he ''expected Mr. Butler to see that the payments from Mr. Lindsey were collected and turned into the bank''; that in this case ''two specific payments were as a fact made by Mr. Butler or charged by the bank against his account out of six payments which were made altogether.'' Only five installment payments were made by the plaintiff, and the first four of them were made to Butler. None of them were made until several days after they respectively became due.

The fifth installment, due March 19th, was paid directly to the bank by a brother of the plaintiff on April 21, 1924. Plaintiff had some negotiations looking to the sale of the automobile to a man named Law, and during plaintiff's absence the automobile was given into the possession of Law, but the court found, on sufficient evidence, that no sale to Law was ever consummated. If an agreement to sell the automobile to Law was ever executed, it was canceled and the possession and ownership of the automobile were restored to the plaintiff on or before April 12, 1924. April 15, 1924, in an action commenced by the defendant Pacific Ready-Cut Homes, Inc., against Law, the automobile was taken from the plaintiff's possession by the sheriff under a writ of attachment. Butte and Barker had the management and control of the Pacific Ready-Cut Homes, Inc., and they and their families owned all of its capital stock. The bank knew of the attachment and, on April 22d, it "put in a third party claim for the automobile," in which claim it was stated that the bank was the legal owner and the plaintiff the registered owner of the automobile. On April 21st, six days after the attachment and two days after the April installment of the purchase price became due, the bank accepted payment of the installment which had become due March 19th. April 26, 1924, the bank assigned the Butler contract to Butte and Barker in consideration of the payment by them of the sum of $1,510.50, the amount of the unpaid installments and interest thereon. The plaintiff first heard of the assignment to Butte and Barker on April 28th, and at 10 o'clock in the forenoon of that day he tendered the bank payment of the amount of all unpaid installments and interest. Having parted with all interest in the contract, the bank refused to accept the money so tendered. About 10:30 or 11 o'clock in the same forenoon the plaintiff "went to the Pacific Ready-Cut Homes and offered Mr. Barker the money to pay the entire sum due on the contract, plus interest." On the refusal of Barker to accept the money, the plaintiff immediately deposited the amount thereof in the defendant bank, with instructions to pay the same to Butte and Barker, upon their assignment to him, within five days, of the Butler contract. On the next day the bank mailed a letter to Butte and Barker, notifying them of the deposit. At 1:15

o'clock in the afternoon of April 28th, Butte and Barker deposited in the mail a letter directed to the plaintiff, stating that the installment of $300 payable April 19th had not been paid; that the plaintiff had "executed a contract for the sale of said automobile to L. Lawrence Law, and delivered possession of the automobile" to him; that the automobile had been "levied upon under writ of attachment" in the action referred to herein; that "you were a party to a sale of said automobile by said Law . . . to us"; and that by reason thereof the writers, "as assignees of the Hellman Commercial Trust and Savings Bank, . . . do hereby elect to take possession of said automobile, . . . and do hereby declare and notify you that all payments heretofore paid under said contract are hereby forfeited." This letter, which was registered, was returned "unclaimed." April 28th, the plaintiff duly made a third party claim as owner of the automobile. The next day the Pacific Ready-Cut Homes, Inc., delivered to the sheriff an indemnity bond to cover the plaintiff's third-party claim. At the same time Butte and Barker filed a third-party claim as owners of the automobile and it was released to them. They thereafter sold it to persons not parties to this action.

The court found that the plaintiff was never in default except in the time of payment and that such default was waived. The evidence is sufficient to support the findings. Relative to payment of the April installment, the plaintiff testified that, apparently on April 22, 1924, Butler said: "I talked to Mr. Hellman, and he says you are perfectly good for it and they will hold that in abeyance until the suit is settled."

It is clear that the bank waived plaintiff's defaults, if there were any, except that of nonpayment of the installment which fell due April 19th. On April 21st the plaintiff was in default in payment of the March and April installments. The bank may have had the right on that day to elect whether to accept payment of the March installment or to declare a forfeiture of the plaintiff's rights under the contract by reason of his defaults, one of which then existing was the nonpayment of the April installment, but it would be a harsh rule which would permit it to do both. It would be contrary to modern principles of justice to hold that, under the circumstances stated, the bank could ac-

cept payment of the March installment on the theory that the contract was still in force and then declare a forfeiture on the ground of a default made prior to such payment. It is true the contract provides that "acceptance by the seller of any payment after same is due shall not constitute a waiver by him" of the provision making time of the essence thereof. It has been held that, under a similar provision, by accepting payment of installments when they were past due, the seller "did not . . . waive its right to retake the automobile upon further default." (*Pacific Finance etc. Co.* v. *Pierce*, 48 Cal. App. 600, 603 [119 Pac. 1115].) This is far from a holding that under such circumstances the seller may retake the automobile on the ground of past defaults. "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (Civ. Code, sec. 1442.) The reasonable interpretation of the provision in question is that the acceptance of overdue payments "shall not constitute a waiver" of future defaults, the evident purpose being to avoid the necessity of giving notice, after such an acceptance, that strict compliance with the terms of the contract will be exacted in the future. By accepting payment of the March installment on April 21, 1924, the bank "waived all past defaults in performance, but it did not alter the terms of the contract with regard to the future." (*Hoppin* v. *Munsey*, 185 Cal. 678, 683 [198 Pac. 398, 400].) Butte and Barker had no right to declare a forfeiture on account of any default which the bank had waived, and no subsequent default occurred, the plaintiff having tendered them full performance as soon as he learned that the contract had been assigned to them.

■ The plaintiff, however, was not entitled to judgment for the full value of the automobile, but only for such value less the amount of the unpaid installments and interest thereon. (24 Cal. Jur. 1056; *Corey* v. *Struve*, 170 Cal. 170, 173 [149 Pac. 48]; *California C. F. Assn.* v. *Ainsworth*, 134 Cal. 461, 463 [66 Pac. 586]; *Connolley* v. *Power*, 70 Cal. App. 70, 76 [232 Pac. 744].)

■ There is no evidence whatever to warrant the judgment against the bank. It had a perfect legal right to assign the contract to Butte and Barker and there is no evidence

of any wrongful conduct on its part to the injury of the plaintiff.

The judgment in favor of the plaintiff against the defendant Hellman Commercial Trust and Savings Bank is reversed and the trial court is directed to enter judgment in its favor against the plaintiff.

The judgment in favor of the plaintiff against the defendants William B. Butte, Berne S. Barker, and Pacific Ready-Cut Homes, Inc., a corporation, is modified by striking from the last paragraph thereof the words and figures "7,135.60, in lawful money of the United States (being the sum of $6,000") and inserting therein in lieu thereof "$3,500, in lawful money of the United States." As so modified, the judgment against said defendants is affirmed, all of the appellants to recover their costs of appeal.

Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 28, 1929, and the following opinion then rendered thereon:

THE COURT.—The appellants have filed a petition for a rehearing. They allege anew that a vendor under a conditional sale contract does not waive the right to declare a forfeiture by accepting part payment of money then overdue. An answer to this contention is found in *Redd* v. *Garford Motor Truck Co.*, 205 Cal. 245 [270 Pac. 447]. The plaintiff in that case had purchased a truck under a conditional sale contract. He paid only a part of the first installment and subsequently paid the whole of the second installment, leaving unpaid the balance of the first. Thereafter the defendant elected to treat the plaintiff's rights under the contract as forfeited and to repossess the truck. The plaintiff relied on a subsequent oral agreement and a waiver of the defendant's right to declare a forfeiture. The court speaking through Mr. Justice Richards, said: "Since the trial court found in the plaintiff's favor upon the issues tendered in said action, we must assume that it not only accepted the plaintiff's version of said oral agreement, but also interpreted the acts of the defendants in accepting without objection the second installment due to them under the original

agreement as a waiver of their right to insist upon a forfeiture because of the failure of the plaintiff to pay in full the amount of the first installment when due, at least until such time as they had notified the plaintiff of their insistence upon said forfeiture in the event that the latter failed to make prompt payment of said balance due after receiving such notice. We are of the opinion that the trial court was correct as to each and both of its foregoing conclusions.''

The petition is denied.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 28, 1929.

All the Justices present concurred.