[Civ. No. 4515. Third Appellate District.—June 7, 1932.]

VIDA D. BOOTH, Respondent, v. THE PEOPLES FINANCE AND THRIFT COMPANY OF MODESTO (a Corporation) et al., Defendants; PALMIRA BERTRAM, Executrix, etc., Appellant.

Hawkins & Hawkins and E. A. Lackmann for Appellant.

F. E. Braucht, V. G. Preston, Hugh H. Griswold and Hjelm & Hjelm for Respondent.

PLUMMER, Acting P. J.—This action was tried before a jury and the verdict rendered therein is in the following words and figures, to wit (omitting title) : ''We, the jury in the above entitled cause, find for the plaintiff Vida D. Booth, and against the defendant G. H. Bertram, that the plaintiff is entitled to the possession of the motor vehicle described in the complaint in this action, and if delivery cannot be had, then for the value thereof, and we find the value of said motor vehicle to be $650.00. And we find the plaintiff's damage to be $1,350.00. And we find for the plaintiff in the sum of $1,500.00 as exemplary and punitive damages.'' Judgment was entered for the plaintiff in accordance with the verdict, and from this judgment this appeal is prosecuted.

The record shows that on and prior to the nineteenth day of March, 1930, Vida D. Booth was the owner of a certain Ford ''Town'' sedan, on which date the plaintiff being desirous of borrowing the sum of $390, executed a bill of sale purporting to convey said automobile to the Peoples Finance and Thrift Company, the consideration stated therein being the sum of $450. Thereupon the Finance and Thrift Company executed and delivered to the plaintiff a conditional sales contract purporting to sell the Ford sedan to the plaintiff for the sum of $490, receipt of $100 acknowledged as of the date of the contract, $45 retained as interest. The contract provided for monthly payments in the sum of $32.50,

beginning on the twenty-second day of April, 1930, and payable on the twenty-second day of each and every month thereafter until full payment had been made; interest on deferred payments from maturity at the rate of one per cent per month, payable monthly.

The "Town" sedan remained in the possession of the plaintiff until on or about the thirteenth day of October, 1930. At the time of the transactions herein referred to, no delivery was made of the sedan to the Peoples Finance and Thrift Company, and consequently no redelivery thereof from the Peoples Finance and Thrift Company to the plaintiff. While couched in the form of a sale by the plaintiff to the defendant, Peoples Finance and Thrift Company, and a resale by the Peoples Finance and Thrift Company to the plaintiff, the transaction was in fact a loan from the Finance and Thrift Company to the plaintiff, and the execution of the two instruments to secure the repayment thereof.

Without setting forth the dates and items of the different payments, the testimony in the record is sufficient to show payment of the monthly installments, up to and including the twenty-second day of September, 1930, and that the next payment on the conditional sales contract would not become due until the twenty-second day of October, 1930, provided two certain instruments, or notes, or evidences of indebtedness signed by third parties were accepted by the Peoples Finance and Thrift Company as payment on the installments provided for in the contract.

The record shows that the plaintiff owned a certain note for $36.55, and likewise, an assignment or mortgage in the sum of $70.08. The testimony on the part of the plaintiff was to the effect that the Peoples Finance and Thrift Company accepted these two instruments as cash, and there is sufficient testimony in the record to justify this conclusion.

On the thirteenth day of October, 1930, it appears that the plaintiff made two visits to the office of the Peoples Finance and Thrift Company, for the purpose of making some arrangement toward paying the balance still owing on the sales contract, leaving the Ford sedan standing upon the street near the office of the Finance and Thrift Company. Some time between the two visits it appears that G. H. Bertram took possession of the automobile under the claim that payment had not been made according to the terms of the

contract, and therefore the plaintiff had forfeited her rights thereto. Upon the second visit of the plaintiff to the office of the Finance and Thrift Company, for the purpose of arranging for the payment of whatever remained due upon the sales contract, she was informed by Bertram that she was too late, and being asked some questions in relation thereto as to why he had taken the automobile without giving any notice, replied: "That's the way I treat people who fight me." (This remark referred to litigation the defendants had had over a certain chattel mortgage executed and delivered by the Booth Motor Company, of which the plaintiff was secretary, and her husband, president, to the Peoples Finance and Thrift Company.)

Upon this appeal it is insisted that there is no liability on the part of G. H. Bertram, on the theory that he was acting as agent for the Peoples Finance and Thrift Company, a corporation. This objection, however, is untenable if the taking of the automobile on the thirteenth day of October, 1930, was tortious. The finding of the jury is to such effect. An agent cannot excuse himself for a tortious act on the plea that he is acting for his principal. (*Perkins v. Blauth*, 163 Cal. 782 [127 Pac. 50], and the cases there cited.)

It is further urged that the verdict is excessive, not only as to the value of the automobile, but also as to the damages awarded, and as to the exemplary or punitive damages. While not so stated in the verdict, for the purposes of this opinion we will assume that the language—"And we find the plaintiff's damage to be $1,350.00"—found in the verdict, referred to damages suffered by the defendant for and on account of being deprived of the use of the automobile.

The record shows that upon the automobile, assuming that the plaintiff's testimony is correct, there had been paid on account of the sums mentioned as the purchase price of the automobile in the sales contract, the sum of $223.63, leaving unpaid $166.37. These figures are arrived at by subtracting the amount paid on the contract from the $390, the original amount of the loan, and to secure the payment of which the instruments heretofore referred to were executed. The law is well settled that in an action of replevin where there is an indebtedness or lien upon the property, and reposses-

sion of the property is not obtained, but only payment made in cash, the plaintiff can recover only the value of his interest therein.

In *Bunnell* v. *Baker*, 104 Cal. App. 313 [285 Pac. 877, 879, 286 Pac. 1090, 1091], the extent of the recovery under such circumstances is there stated: "The interest of respondent in the trucks was not the entire estate therein, but was special and limited. The value of his interest should have been determined by taking the market value of the trucks and deducting therefrom the amount remaining unpaid under the terms of the conditional sales contract. In case delivery of the trucks could not be made, he was not entitled to a judgment for the full market value of the trucks, but only to the value of his special interest therein. (*Lindsay* v. *Butte*, 96 Cal. App. 465 [274 Pac. 428, 275 Pac. 525]; *Connell* v. *Hogg*, 181 Cal. 730 [186 Pac. 34]; *Connelly* v. *Powers*, 70 Cal. App. 70 [232 Pac. 744]; *Griffith* v. *Reddick*, 41 Cal. App. 458 [182 Pac. 984].) As the jury evidently followed the instructions of the court and found the full market value of the trucks at the time of the trial and judgment was entered for this amount in case the trucks were not returned to respondent, we must conclude that the giving of the instructions on the question of value was prejudicial error requiring a reversal of the case."

The instruction of the court relative to ascertaining the value of the automobile, reads as follows: "If you find from the evidence in this case that a delivery or return of said motor vehicle cannot be had, then if you find as aforesaid that the plaintiff is entitled to the possession of said motor vehicle, your verdict shall be for the plaintiff and against the defendant, in such amount as you find from the evidence to be the reasonable value of said motor vehicle."

The appellant does not base her contentions upon the instruction, but directs her attack to the fact that the verdict following the instruction is excessive in that it found the value of the automobile and directed recovery of that sum, irrespective of the fact that plaintiff's interest therein was limited by the indebtedness unpaid thereon in the sum which we have mentioned. In arriving at its verdict the jury evidently followed the instruction of the court in finding the value of the automobile, and disregarded the fact that the plaintiff had only a qualified interest therein. This objec-

tion, however, does not in and of itself, necessarily lead to a reversal, for the simple reason that the sales contract set forth in the record shows that the money unpaid for the automobile was owing to the defendant, the Peoples Finance and Thrift Company of Modesto, a corporation, and not to the defendant, G. H. Bertram, and therefore his liability for his tortious act would be the market value of the automobile.

The next objection of the appellant presents a more serious situation. As heretofore stated, the jury allowed $1350 damages, which we assume to be damages for the usable value of the automobile, suffered by the plaintiff by reason of the detention thereof. In support of this finding plaintiff introduced the following testimony. (We set it forth by question and answer): "Q. How many years have you been in the automobile business? A. Fifteen years. Q. During that time did you engage in buying and selling Ford automobiles? A. Yes. Q. Did you have occasion to take note of, and hire or rent Ford automobiles during that period of time, to know the reasonable value thereof per day? A. I have rented cars at that price. Q. How much per day? A. Well, I would not rent a car, as good in condition as that would be, but I would rent a cheaper car for about $10 per day. Q. What would you say would be the reasonable rental value of that automobile, an automobile like that, per day? A. $15.00." On cross-examination the witness testified as follows: "Q. Did you ever know, within the last 2 years, of any Ford automobiles being leased? A. They do have rent places where they rent them out. Q. Do you know of any particular instance in the last 2 years, of any Ford automobile being leased by the day or by the month or by the week or by the year? A. Yes, sir. Q. What instance is that? A. I know of three places where they do such business, and have Ford automobiles. Q. Do you know of any instance, any particular person leasing any particular automobile? A. I know their rates. Q. Do you know of anyone who ever paid their rates? A. Why, I cannot recall. Q. Well, just name one of them? A. There are a number of traveling-men who rent, acquaintances and friends of mine, who have at different times, spoken of renting cars."

Upon the part of the defendants, a witness was introduced who testified as follows: "Q. Are you familiar with the

rental value of cars of that type and that condition? A. I took that up with Mr. Paradio this morning, on an open job, to be rented to the Department of California, State of California, obtained $1.75 a day for an open car, with no upkeep. I would say that car would run from $2 to $2.25 a day as a fair daily rental.'' This is all the testimony there is in the record upon which to base a verdict for $1350 for the usable value of the car during the nine months it was held from the possession of the plaintiff.

The testimony further shows that the car was not in fact used. It thus appears that there is absolutely nothing in the record to support the verdict returned by the jury as damages for the detention of the automobile. Had the testimony introduced by the plaintiff, as to the usable value of the car, been accepted by the jury, the damages would have been fixed at the sum of $4,050. On the other hand, if the usable value, as testified to by the only witness introduced on behalf of the defendant, had been accepted as a basis for an allowance, the verdict would have been in the sum of $607.25. Before the statement by a witness can really amount to evidence, it must be made to appear that he has some knowledge of the subject matter about which he is testifying. Here, it is evident that no such knowledge was possessed. Nor is there anything in the testimony to show net usable value of the car, in excess of the testimony given by the one witness for the defendants.

In the case of *Bonestell* v. *Western Automotive Finance Corp.*, 69 Cal. App. 719 [232 Pac. 734], this court had occasion to consider the question of damages for the detention of an automobile, and what is there said applies with equal force to the instant case, save and except that the testimony in the instant case is much weaker than that upon which it was sought to uphold a verdict for damages in the Bonestell case, as the opinion in the Bonestell case quotes liberally from the case of *Mutch* v. *Long Beach Imp. Co.*, 47 Cal. App. 267 [190 Pac. 638]. We set forth the following excerpt from the opinion in the Bonestell case: ''The possession, as nearly as we can determine from the transcript, was withheld for the period of about 48½ days. The plaintiff in his complaint alleged that the value of the car was the sum of $2500.00 and that the car had at all times and would continue to have a value on account of the use to which it might

be put of the sum of $25.00 per day, and upon trial of the action, was allowed the sum of. $25.00 per day for the possible use of said car for the period of forty days, to-wit, $1000.00. A retrial was granted upon the sole question of damages, and upon a second hearing the plaintiff was allowed compensation for the possible use of the car in the sum of $12.50 per day. It is contended on the part of appellant that there is no testimony supporting the judgment or warranting any finding on the part of the court of such value. Upon the question of value the transcript discloses the following testimony: 'In my opinion, the reasonable rental value, 8 hours, 100 miles a day, would be $20. a day, which would include a driver. The rate would not be less for an extended period of time. In renting this car at $20. a day, I pay for the oil and gas.' The witness Johnson testified as follows: 'A machine in reasonably good condition, of the model described by you, we get with drivers, about $20. a day, not exceeding 100 miles for eight hours. Most of the drivers work on commission. That $20. includes the expense. Drivers get all the way from two to five dollars a day.' A witness named Cherry testified as follows: 'The kind of car you mention, the reasonable rental value a day, over and above the expense of operating it, would be $25.' And the witness Kemp testified in these words: 'The reasonable rental value of a car in good condition, of the model described by you, would be $20. or $25. a day, without a driver, but if I rented a car for from thirty to forty days, I would be satisfied with $10. or $12.50 a day.' This is all the testimony to which our attention has been called to support the finding of the court as to the value of the possible use of the car. The testimony shows that, as a matter of fact, the car was not used. Section 3359 of the Civil Code provides that 'damages must, in all cases, be reasonable', and unless the damages allowed are shown to be such as approach actual, usable, or reasonable value of the article to the owner, they have no support in this section. In the case of *Mutch* v. *Long Beach Imp. Co.*, 47 Cal. App. 267 [190 Pac. 638], the rule of determining damages in such cases as this is very clearly set forth. It is there said: 'It is the net usable value less the expense of keeping up the property, which may be recovered. In determining the value of the use under the above rule, care should be taken not to permit the fixing of

an amount out of all proportion to the value of the thing itself.' In that case the automobile was detained for a period of 86½ weeks. The damages allowed for such detention amounted to the sum of $1297.50, or $15. per week. In that case the damages were held excessive. In the case at bar the damages allowed for the detention of the car amount to about the sum of $87.50 per week. Thus, if the car had been detained in this case for the same period of time that it was held in the Mutch case, the same calculation and allowance would have fixed the damages at $7568.00. We give these figures for the purpose of illustrating the disproportion of the allowance to the real damages suffered. On the part of the defendant one witness testified that if he rented the car for from thirty to forty days he would 'be tickled to death to get $10. or $12. a day'. Another witness testified that $10. would be the gross value of the car, which would yield thirty per cent net as profit. It thus appears that there is no testimony showing the net yield or value of the car at any sum approaching $12.50 per day. The testimony on the part of the plaintiff did not show any sum as the net usable value of the car and that on the part of the defendant was by one witness who stated, as just said, thirty per cent of the gross value, which would yield about $3. per day. Thus, if applied to the case at bar, the car not being used, and the damages being for 48½ days, would entitle the plaintiff to damages in the sum of $145.50. We do not wish to be understood as fixing this sum as the usable value of the car which the plaintiff in this case is entitled to recover, but simply state that the only testimony in the case bearing upon the question of damages, based upon the rule laid down in *Mutch* v. *Long Beach Imp. Co., supra,* which the court was entitled to consider, shows damages only in that sum.''

Applying the rule followed in the Mutch and Bonestell cases, *supra,* the only testimony showing the net usable value of the car in question fixes the damages at $607.25. The respondent endeavors to distinguish the holding in the Mutch case, *supra,* from the facts and circumstances here presented, by calling our attention to the fact that the sum of $203.15 was allowed for depreciation as well as damages for the detention. However, a careful reading of the opinion in that case discloses that the reversal was not based upon that error alone. The value of the car in the

Mutch case was found by the jury to be the sum of $400. Damages for detention were fixed at the sum of $1297.50 allowed as rental value. The court in referring to this matter said: "It must be apparent at once that there is something wrong with a scale of damages that allows three times as much for the detention of a car from the possession of the owner for a period of two years as could have been recovered if the trespasser had completely smashed it up and destroyed it in the first instance." We might quote further, but this language shows that the court had in mind the great disparity between the value of the car and the rental value fixed by the jury. In that case, just as here, no attempt was made to fix the net usable value of the car.

In the case of *Tucker* v. *Hagerty*, 37 Cal. App. 789 [174 Pac. 908, 910], there is language in the opinion to the effect that, "There is nothing so startling in the fact that the rental value allowed by the court amounts to more than the value of the machine, as to compel a reversal of the judgment." The record in that case discloses, however, that the defendant admitted the usable value of the particular car involved in that action to be the sum of $4 per day. The trial court allowed the sum of $5 a day, and then cut down the judgment to $4 a day, from which it follows that the question of excessive damages was not presented to the court for consideration. Nor would we be inclined to grant a reversal simply because the rental value, by which we mean the net rental value of the car, was shown to be in excess of the actual value of the car. We are simply calling attention to the fact that there is no testimony supporting the amount of the damages allowed in this case, and also to the fact, which we think to be the law, that there is something wrong, as stated in the Mutch case, when the rental value of the car is held to be so greatly in excess of its actual value.

In *Bunnell* v. *Baker, supra,* the court in its opinion denying a rehearing, in considering the question of excessive damages where the value of the property was fixed at $10,000, and the amount allowed for detention, the sum of $15,000, said: "This amount is not excessive, it is dangerously near being so. We do not think it necessary to decide this question, but we believe the case should be tried

anew.'' The disproportion between the value of the car in the instant case and the amount of damages allowed for its detention is much greater than the disproportion between the value of the property and the amount allowed for damages in the Bunnell case, which was held as being ''dangerously near'' excessive.

In the case of *Nelson* v. *Younge,* 73 Cal. App. 704 [239 Pac. 67], the question as to the value of the car only was involved. No question was raised as to excessive damages. However, the value of the car being fixed at $1,000, and the damages for its detention at only $600, the case readily becomes distinguishable from the cases which we have cited and the one which we now have under review.

Likewise, in the case of *Washington Lumber & Mill Works* v. *McGuire,* ■(Cal. App.) 291 Pac. 458, no question of excessive damages was involved. It was stipulated in that case that the reasonable value of the use of the truck was the sum of $10. We may add the record shows that the truck was being used in the performance of a contract which doubtless led to the stipulation. At least this court felt bound by the stipulation.

In *Stanley W. Smith, Inc.,* v. *Pilgrim,* 117 Cal. App. 244 [3 Pac. (2d) 573], in considering the question of usable value, the opinion refers to the instruction of the trial court, which was given in substance as follows: ''The jury were instructed that if they should find for the defendant he would be entitled, during the stipulated time of detention, to compensation based upon its reasonable rental value, if any, deemed by the law as the net usable value, less the expense of upkeep and maintenance''; and then added the following comment: ''If such be the correct rule, the verdict rendered might legally have been approximately double the amount actually allowed, and we would not be authorized to say as a matter of law that their estimate upon all the evidence was excessive.'' No instruction of that kind appears in the present case, nor is there any testimony showing the net usable value, to be at all commensurate with the amount allowed. It may be observed,

however, that the court, in the case of *Stanley W. Smith, Inc.,* v. *Pilgrim, supra,* quoted with approval the cases which we have already cited, and does not hold that damages may be allowed unless supported by proper testimony.

The rule laid down in the Mutch case, *supra,* is taken from the case of *Armstrong et al.* v. *City of Philadelphia,* 249 Pa. St. 39 [Ann. Cas. 1917B, 1082, 94 Atl. 445], where the authorities are carefully considered, and the damages for detention allowed in double the value of the property, held to be grossly excessive. ■ The instructions in the instant case refer only to the rental value, and not to the net rental value, and should have been made more specific, but it does not appear that the appellant made any request therefor, and the failure of the instructions in this particular, under the circumstances, could not be held reversible error if the verdict found any proper support in the testimony.

■ It is further objected that the allowance of $1500 as exemplary or punitive damages is excessive and not supported by the testimony.

The transcript shows that in support of the claim for punitive damages the record, in an action prosecuted by the defendant, the *Peoples Finance and Thrift Company of Modesto, a Corporation,* v. *Booth Motor Co., a Corporation,* was introduced in testimony. It further shows that although the Booth Motor Company filed an answer, it did not appear at the trial of the action, and that judgment was taken by default. The record also shows that an attachment suit was instituted by the defendant, the Peoples Finance and Thrift Company, a corporation, against the Booth Motor Company, in which about $100 of money belonging to the Booth Motor Company was attached, or rather, garnished. This attachment was later released. There was no objection to the introduction of this testimony, but we do not very well see how this testimony supports any claim for punitive damages. The only testimony in the case relative to punitive damages, and which can bear upon that subject, is the manner in which the defendant Bertram took possession of the automobile involved in this action, and as found by the jury, took possession prior to any default. in the payment of the monthly installments which were held by the jury to have

been paid by the two notes which we have heretofore mentioned, and which were claimed by the defendants to have been taken only for collection. The conduct of the defendant Bertram, however, subsequent to the taking of possession of the automobile, and his refusal to redeliver the same, and also his actions when the plaintiff sought to make settlement of the entire balance owing upon the contract of sale, does furnish some basis for holding that the defendant Bertram exhibited a malicious purpose. There does not appear to have been any oppression or outrage in the taking of the automobile, nor does there appear to have been any oppression to the detention of the same, or that any hardship was imposed upon the plaintiff, other than has been, or could be compensated by the allowance of the net usable value of the automobile during the period of detention. Under such circumstances the disparity between the actual damages sustained and the punitive damages allowed, may be considered in determining whether the latter damages are excessive, and while, as said in the case hereafter cited, ''there is no fixed rule as to the proportion between actual and exemplary damages in cases where exemplary damages are recoverable'', it is nevertheless held that the exemplary damages must bear a reasonable proportion to the actual damages sustained.

While not commented upon, or made an issue in the case, the amount of punitive damages allowed in *Bunnell* v. *Baker, supra,* in the sum of $1,000, where the value of the trucks was found to be the sum of $10,000, is an illustration of some reasonable proportion between punitive and actual damages.

While section 3294 of the Civil Code provides for the allowance of punitive damages, the power of the court in relation thereto is the same as may be exercised in any case of excessive damages, even though it is true that a jury has somewhat wider discretion in awarding punitive, than in fixing compensatory damages.

In *Plotnik* v. *Rosenberg,* 55 Cal. App. 408 [203 Pac. 438, 439], the District Court of Appeal, speaking through Presiding Justice Langdon, after reviewing a number of cases, uses the following language: ''The cases in which courts have set aside such verdicts furnish some guide to the exercise of this power in the present case. A study of

these cases reveals the fact that even in cases presenting evidence of extreme malice and aggravation, the verdicts permitted to stand do not represent an award of punitive damages so greatly in excess of the actual damages as in the present case.'' To be sure, the circumstances presented before the court, where this language is used, shows a much greater disparity of the punitive damages, to the actual damages awarded, than does the record in the instant case, Nevertheless, the disproportion is exceedingly great, and excluding the testimony as to the litigation between the Finance Company and the Booth Motor Company, which does not furnish a basis for punitive damages against the defendant Bertram, but which undoubtedly was considered by the jury, there remains nothing showing any extreme malice or aggravation, though it does, to some extent, as we have heretofore stated, exhibit an unfriendly and malicious disposition on the part of Bertram, but nothing oppressive further than we have stated. Under such circumstances, and also in view of the fact that the jury, without any testimony whatever, allowed such extreme compensatory damages, the conclusion is unescapable that the punitive damages are likewise excessive.

If the taking of the automobile, on the 13th of October, 1930, was prior to any default on the part of the plaintiff, and the jury, by its verdict, so held, all questions as to whether the plaintiff did or did not make a valid tender to the defendants of the remainder owing upon the sales contract become wholly immaterial, but the taking being held wrongful, the refusal of the defendant to accept payment of the remainder of the purchase price of the automobile furnishes some basis for supporting the verdict of punitive damages, even though it may be slight.

Following the rule laid down in the case of *Wilkinson* v. *Singh,* 93 Cal. App. 337 [269 Pac. 705], where the punitive damages allowed were held excessive, we have come to the following conclusion: First, that the judgment of the trial court awarding the plaintiff $650 as the value of the automobile, is affirmed. Second, that the judgment awarding the plaintiff punitive damages, and also awarding the plaintiff compensatory damages, is reversed, and the cause remanded for a new trial as to these two issues, unless the respondent shall, within twenty days from the date of

filing this opinion, file in this court a *remittitur* of all compensatory damages in excess of the sum of $607.25, and also for all sums awarded as punitive damages in excess of the sum of $500, and if such *remittitur* be filed, the judgment herein shall be ordered modified in accordance herewith and as so modified, affirmed. If the *remittitur* is so filed, respondent will be awarded costs.

Parker, J., *pro tem.*, and Thompson (R. L.), J., concurred.

On June 15, 1932, the following opinion was filed by the District Court of Appeal:

THE COURT.—The opinion and decision of this court in the above-entitled cause rendered on the seventh day of June, 1932, having contained the following in the concluding paragraph, to wit: "Second: that the judgment awarding the plaintiff punitive damages, and also awarding the plaintiff compensatory damages, is reversed, and the cause remanded for a new trial as to these two issues, unless the respondent shall, within twenty days from the date of filing this opinion, file in this court a *remittitur* of all compensatory damages in excess of the sum of $607.25, and also for all sums awarded as punitive damages in excess of the sum of $500, and if such *remittitur* be filed, the judgment herein shall be modified in accordance herewith, and as so modified, affirmed. If the *remittitur* is so filed, respondent will be awarded costs."

And it appearing that respondent has filed in this court, on the fifteenth day of June, 1932, a *remittitur* of all compensatory damages in excess of the sum of $607.25, and also of all sums awarded as punitive damages in excess of the sum of $500, the judgment is modified in accordance therewith, and as so modified, is affirmed. Respondent is awarded costs.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 7, 1932.