[Civ. No. 4363. Fourth Dist. May 28, 1952.]

STANLEY LUKE, Respondent, v. MERCANTILE ACCEPTANCE CORPORATION (a Corporation) et al., Appellants.

Ralph Robinson for Appellants.

Louis W. Caporale, Jr., for Respondent.

MUSSELL, J.—A jury trial in this action for damages for conversion of an automobile resulted in a verdict for plaintiff in the sum of $580.82 compensatory damages, and $2,500 exemplary and punitive damages. Defendants appeal from the judgment entered against them for these amounts. They assert that the evidence was insufficient to support the verdict and judgment and that the court erred in the admission and exclusion of evidence and in its instructions to the jury.

On September 2, 1949, defendants, who were engaged in the business of selling used cars, sold a used 1949 Ford automobile to one Diego Martinez. Martinez traded in a 1941 car as down payment and a contract of conditional sale was executed by the Barnett Car Company and Martinez. The contract recited a balance due on the 1949 Ford of $1,570.56, payable in monthly installments of $65.44 for 24 months. Martinez owed a balance of $451.08 on the 1941 car which he traded in and stated that he expected to receive funds from the government with which he would pay this balance. He then executed and delivered a promissory note for $451.08, to A. J. Barnett, payable on March 2, 1950. The note bears the following notation:

"It is further agreed that this note is secured by 1941 Ford, Motor #98BA58426 subject to Mercantile Acceptance Co lien and that no assignment of interest or equity will be accepted unless this note is first paid in full."

The note was not made a part of the conditional sales agreement and was not referred to therein. Barnett Car Company sold and assigned the contract of conditional sale to defendant Mercantile Acceptance Corporation or on about

September 2, 1949, and retained the promissory note. The 1949 Ford was delivered to Martinez and the monthly payments on the contract were thereafter made by him until April, 1950, and thereafter by plaintiff Luke to Mercantile Acceptance Corporation to and including the payment on July 1, 1950.

On or about April 25, 1950, plaintiff Luke purchased the equity of Martinez in this car, giving him a check in the sum of $290 and $10 in cash. At the time of this transaction Martinez informed Luke that there was a balance of $1,047 owing on the car under a conditional sales contract held by Mercantile Acceptance Corporation, which contract called for monthly payments of $65.44. However, Martinez did not inform Luke of any claim of the Barnetts with reference to the automobile and Martinez did not mention the promissory note which he had given Barnett.

On April 29, 1950, Martinez and Luke went to the office of the defendant Mercantile Acceptance Corporation to formally transfer and assign the Martinez equity to Luke. Martinez and Luke talked to one Cliff, whom they presumed to be the manager in charge. Cliff informed them that he did not have time to prepare the equity assignment and asked them to return later. Luke then asked Cliff if he, Luke, should "go ahead" and make the payments before the transfer was formally made and Cliff informed him that it was "all right" to make the payments. No mention was made by anyone of any claim in favor of the Barnetts or as to the promissory note held by them. Luke then made three monthly payments to Mercantile Acceptance Corporation on the following dates: May 6th, June 3d and July 1st, 1950.

At the time he made the May payment, Luke called Cliff's attention to the fact that the receipt was made out to Diego Martinez, whereupon Cliff said "Go ahead and make the payments under that name" and stated that it would be "all right" pending the formal transfer of the equity to Luke on their records. Luke then informed Cliff that he, Luke, was the new equitable owner of the car and no objection was then made to Luke as such owner or to his possession and use of the automobile.

On the morning of August 5, 1950, Luke went to the office of the acceptance corporation and tendered the August payment on the contract. The cashier refused to accept it and referred Luke to Mr. Basham, the manager of the defendant acceptance corporation, who informed Luke that

Martinez owed the Barnett brothers $428 and that Luke would have to "straighten this out" with the Barnett company. Basham did not then claim that the August payment was "late" or that there was any default under the terms of the sales contract and told Luke that he should see the Barnett company and make the "necessary arrangements."

Luke then talked to defendant Jess Barnett, who stated that he wanted his money and that he had men out to pick up the car. Luke asked for time to see Martinez about "straightening out" the Barnett claim. Barnett said "I can stop my men, but I can't stop Mercantile's men." Luke then drove the car to a service station, and while it was being serviced, one Linn, who stated that he represented the Mercantile Acceptance Corporation, repossessed the automobile despite the strenuous objection of Luke.

On August 12th Luke and his attorney went to see Basham and were informed by him that he had picked the car up for Barnett and that he "didn't pick it up for nonpayment." Basham informed them that under the Soldiers' and Sailors' Relief Act they had no right to pick up the car because Martinez was "in the service" and that if they would get Mrs. Martinez to sign for the car, he would return it to them; that he had already checked on Luke's credit and was ready and willing to finance the car with him. He also stated that Luke had better "straighten out" the Barnett claim if he wanted the car; that he was interested in securing collection of the promissory note and that he was collecting the note for Barnett.

Basham testified that on August 5th he asked Luke if he had any of the necessary documents signed by Martinez and further told him that these documents were necessary for a transfer to Luke; that he supplied Luke with the necessary forms, including a power of attorney to sign Martinez' name to the legal owner's certificate; that he asked Luke and his attorney for some proof of their title and stated that they had no documents of any nature relative to the automobile and that he would have to have the white registration certificate out of the automobile. He further testified that they were looking for the automobile after they received notice that Martinez had gone into the Marine Corps; that Mrs. Martinez told them that Martinez had sold the car to someone and that she did not know his name or where he was located; that the reason his company repossessed the automobile was because they knew that the car was no longer

in the possession of Martinez; that they did not know who had possession of it, and for that reason they had no insurance; that the car was repossessed because the August payment was late; that the Mercantile Acceptance Corporation had a very heavy investment in the automobile and that they were trying to protect their interest in the car.

Sometime in August, after the repossession, Luke located Martinez, who was in the Marine Corps, and obtained his signature to a bill of sale and thereupon filed this action. On August 14, 1950, the Barnett Car Company filed a claim and delivery action against Martinez and Mercantile Acceptance Corporation and the automobile was returned to Barnett Car Company under a writ of possession issued in said action.

 The evidence was sufficient to support a finding that defendants unlawfully converted the automobile involved. Plaintiff purchased the equity of Martinez in the car for a valuable consideration and possession was immediately transferred to the plaintiff. The fact that plaintiff was the equitable owner of the car, coupled with his actual and lawful possession thereof at the time it was forcibly taken from him, entitled him to bring an action in conversion, even though he had not then secured a transfer of the registration certificate. (*Pendell* v. *Thomas,* 95 Cal.App. 33, 34-35 [272 P. 306].) As was said in *Bowden* v. *Bank of America,* 36 Cal.2d 406, 413-414 [224 P.2d 713] :

"In a conditional sale, the title in the seller is for security only, to assure the payment of the purchase price. It carries with it none of the ordinary incidents of ownership. The buyer has the possession and use of the property to the complete exclusion of the seller, subject only to the seller's remedies in case of default. Both in a practical and a legal sense the buyer is the beneficial owner. . . . Likewise, the buyer's interest may be conveyed subject to the rights of the conditional seller. . . . The reserved title of the conditional seller is discharged upon a tender of the balance due by the buyer. . . . The buyer has the full right of possession and use unless he defaults, and may secure title by performance of his obligation without any further assent by the seller. The sole interest of the seller is in the receipt of the price, and his reserved title cannot be used for any other purpose."

In the instant case, Martinez and Luke went to the office of the acceptance corporation and there tendered the August payment on the contract. This payment was refused not be-

cause it was a late payment, or because Luke was not a satisfactory credit risk (for the acceptance corporation had checked on Luke's credit and found it was good) but because the corporation was interested in collecting the money due on the Barnett promissory note. In this connection, it should be noted that the acceptance corporation had received and acknowledged payments on the contract made by Luke and had authorized him to make these payments pending a formal assignment of the contract. ■ While the evidence shows that some of the payments on the contract were made after the due date thereof, the right to declare a forfeiture, under the circumstances here presented, was waived by the acceptance corporation. (*Redd* v. *Garford Motor Truck Co.*, 205 Cal. 245 [270 P. 447]; *Johnson* v. *Kaeser*, 196 Cal. 686 [239 P. 324].)

■ The evidence is clear that at the time the car was repossessed, Martinez had entered military service and was entitled to the benefits of the provisions of section 301, subparagraph 1, of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A., Appendix section 531(1), which provides as follows:

"No person who has received, or whose assignor has received, under a contract for the purchase of real or personal property, or of lease or bailment with a view to purchase of such property, a deposit or installment of the purchase price, or a deposit or installment under the contract, lease, or bailment, from a person or from the assignor of a person who, after the date of payment of such deposit or installment, has entered military service, shall exercise any right or option under such contract to rescind or terminate the contract or resume possession of the property for nonpayment of any installment thereunder due or for any other breach of the terms thereof occurring prior to or during the period of such military service, except by action in a court of competent jurisdiction."

The prohibitions against repossession apply to both the conditional buyer and his assignee Luke and repossession is prohibited not only for nonpayment but "for any other breach" of the terms of the contract. Under the conditions shown, it is quite clear that the repossession of the automobile in question without appropriate court action was unauthorized and supported an action in conversion. Apparently, the defendants recognized this for they offered to return the car, after repossession, to Mrs. Martinez if she would "sign for the car."

■ Appellants argue that there was no evidence of "concert" between Mercantile Acceptance Corporation and the Barnett Car Company and that to recover damages resulting from ·a conversion, it is necessary that there be a concert of action between the defendants in order to hold them jointly and severally liable. ■ Concert of action and unity of design may be inferred from the nature of the acts done, the relation of the parties, their respective interests, their acts, conduct and declarations and other circumstances. ■ The record discloses that both Mercantile Acceptance Corporation and the Barnett brothers were closely associated in the automobile financing business and that the acceptance corporation was attempting to enforce the payment of the Barnett note; that the officers of the corporation referred Luke to defendant Jess Barnett, who apparently knew that employees of both the acceptance corporation and the Barnett Car Company were endeavoring to locate the car. It appears that both said defendants were actively engaged in trying to force payment of the Barnett note by repossession.

It is next contended that the court erred in the admission and exclusion of evidence. We have examined the instances cited and can find no reversible error in the rulings made in this respect.

It is next contended that the court erred in its instructions to the jury. One instruction is as follows:

"If you find from a preponderance of the evidence that the defendant, Mercantile Acceptance Corporation of California, at the time set forth in the plaintiff's complaint, repossessed from the plaintiff, Stanley Luke, the automobile in question not by reason of any default in payment under its conditional sales contract, but for the purpose of enforcing the payment by the plaintiff of the note held by the defendant Barnett Car Company against Diego Martinez, then I instruct you that if such taking and repossession was against the will and without the consent of said plaintiff, such conduct on the part of said defendant constituted an unlawful conversion, and would entitle the plaintiff to punitive as well as compensatory damages against said defendant."

By this instruction the jury was informed that certain conduct on the part of the defendant constituted an unlawful conversion and would entitle the plaintiff to punitive damages against said defendant. ■ The instruction was clearly erroneous for a plaintiff is never entitled as a matter of right

to exemplary damages. (*Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 800 [197 P.2d 713].) As was there said, at page 801:

"The granting or withholding of the award of punitive damages is wholly within the control of the jury, and may not legally be influenced by any direction of the court that in any case the plaintiff is entitled to them. Upon the clearest proof of malice in fact, it is still the exclusive province of the jury to say whether or not punitive damages shall be awarded."

 This erroneous instruction may well have affected the jury in its determination to award the sum of $2,500, plus interest, as exemplary and punitive damages. Under the circumstances, the award made for such damages was excessive and not supported by the testimony.

The conduct of the defendants in attempting to compel plaintiff to assume and pay the indebtedness covered by the Barnett note does furnish some basis for holding that defendant exhibited a malicious purpose. However, there does not appear to have been any oppression to the detention of the car, nor does it appear that any hardship was imposed upon plaintiff other than has been or can be compensated by the compensatory damages allowed. The jury awarded plaintiff compensatory damages in the sum of $580.82, which sum included the total amount paid by plaintiff to Martinez, three monthly payments made by plaintiff on the contract, $15 paid to the Department of Motor Vehicles, $17 for a battery and $7.50 for repairs.

As was said in *Booth* v. *Peoples Finance Etc. Co.,* 124 Cal. App. 131, 144 [12 P.2d 50]:

" 'There is no fixed rule as to the proportion between actual and exemplary damages in cases where exemplary damages are recoverable,' it is nevertheless held that the exemplary damages must bear a reasonable proportion to the actual damages sustained." (See, also, *Wilkinson* v. *Singh,* 93 Cal.App. 337, 345 [269 P. 705].)

In *Finney* v. *Lockhart,* 35 Cal.2d 161, 164 [217 P.2d 19], the court stated that this rule is only for the purpose of guarding against excess; that there is no fixed ratio by which to determine the proper proportion between the two classes of damages; that after an award has been approved by the trial court, the reviewing court will hesitate to declare the amount excessive unless upon consideration of the entire rec-

ord, including the evidence, it must be said that the award was the result of passion or prejudice.

In view of the erroneous instruction given the jury and the unreasonable proportion borne by the excessive exemplary damages to the actual damages sustained, we conclude that there should be a retrial of the issue of exemplary damages by the court or by a jury properly instructed on the subject. An order for the retrial of this limited issue is authorized where, as here, the issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial. (*Brewer* v. *Second Baptist Church, supra,* 801.)

The judgment is reversed insofar as the decree provides for the recovery of the sum of $2,500 as exemplary and punitive damages and the trial court is directed to retry this issue. In all other respects, the judgment is affirmed. Plaintiff and defendants are to bear their own costs on this appeal.

Barnard, P. J,. and Griffin, J., concurred.