[Civ. No. 8421.   Second Appellate District, Division One.—November 20, 1934.]

EDITH  B.  ISAACS, Respondent, v. THE  FRANK MELINE  COMPANY  (a  Corporation),  Appellant.

Walter H. Hewicker, Gibson, Dunn & Crutcher, E. H. Conley and Robert F. Schwarz for Appellant.

Frank F. Oster and George W. Downing, Jr., for Respondent.

HAHN, J., *pro tem.*—The action which gives rise to this appeal is one wherein plaintiff sought a judgment against defendant for damages alleged to have been suffered by her as a result of losses she sustained in an exchange of properties, which exchange she asserts she was induced to make through the fraud and deceit of defendant's employees and agents. The complaint sets forth with considerable detail the acts and representations which are alleged to have constituted the fraud and deceit charged. The trial court found that all of the allegations of the complaint were true. Inasmuch as we have come to the conclusion that there is sufficient evidence to support the court's finding on the issue of fraud and deceit, it will serve no useful purpose to extend this opinion with a detailed recital of the allegations of fraud and deceit set forth in the complaint, or to attempt a *résumé* of the evidence relating to that issue.

The main question which we feel is determinative of this appeal arises in the contention of appellant that the evidence does not support the court's finding that William D. Roberts was at all times during the negotiations for, and

consummation of, the exchange of properties an employee and agent of defendant and acting for defendant.

The record justifies the following brief outline of evidence which we deem pertinent to a discussion of the question of defendant's responsibility for the losses suffered by plaintiff in her exchange of properties.

On July 1, 1927, plaintiff called at the Ambassador office of defendant corporation, which was and is engaged in a realty brokerage business, and there met Clarence A. Lind, vice-president of defendant, and in charge of its sales department. To him plaintiff stated that she owned a triplex apartment house on Rampart Street, which she valued at $20,000, upon which there was a $6,500 mortgage, which she wished to sell; that she came to the office of defendant because she had been informed it was a thoroughly reliable and responsible concern. When Lind advised her that there was little prospect of securing a cash purchaser for the property, but that he could get her an advantageous exchange, plaintiff stated that she was wholly unfamiliar with property values and therefore expressed reluctance to make an exchange. Lind assured her that the defendant company would faithfully protect her in any exchange it proposed; that she could safely trust defendant and rely upon any advice it or any of its officers or employees gave her in connection with an exchange. Plaintiff stated that if she made an exchange, she wanted property that she could promptly sell for the amount of her equity. Upon Lind's assurance that defendant could and would accomplish an exchange for her that would meet her expressed wishes, plaintiff listed her property with defendant for exchange. Lind informed plaintiff that the defendant company had in its employ a licensed salesman, one William D. Roberts, who was a competent and experienced man in exchanges, and one who was thoroughly reliable, and that he would entrust to Roberts the matter of securing for her an exchange for her property. Lind also assured plaintiff that he himself would pass on any property offered to her for trade and that any trade which was recommended to her would have the backing of defendant company.

A few days later Roberts called upon plaintiff at her home at which time she explained to him, as she had to Lind, the purpose she had in making a trade, and the necessity

for securing property that she could convert into cash. Also that she was inexperienced in such transactions and would have to rely upon his recommendations as to any deal he proposed. Roberts assured her that she could safely rely upon him and that he would protect her interests. During the following several weeks Roberts was active in securing and presenting for her consideration several prospective trades, none of which proved satisfactory. During this time Roberts kept Lind informed as to his activities and the trades presented to plaintiff. Some time in the early part of September, the evidence does not disclose the exact day, Roberts brought to plaintiff for consideration a proposal whereby one B. C. W. Block offered to exchange for plaintiff's property contracts for the purchase of cabin sites in Santa Susana Pass of the face value of $13,500. Roberts recommended to plaintiff that she make the proposed exchange—indeed, he urged her to do so, telling her that he knew the property; that the contracts were good and would be paid and that she could not find a better exchange for her property than the one proposed. Upon his recommendation, plaintiff agreed to make the exchange, and upon Roberts' suggestion accompanied him to the office of the Guaranty Building and Loan Association which he suggested as the escrow through which the exchange would be consummated.

Some ten days later, at Roberts' request, plaintiff again with Roberts called at the escrow office, at which time she was informed that instead of the cabin site purchase contracts, Block had put in escrow for exchange a note for $13,500 signed by one Reginal Spears, which note was secured by a trust deed on ten acres of land in Santa Susana Pass. When plaintiff protested that this note and trust deed were not what she had agreed to trade for, Roberts replied that after he had given the matter further consideration, he concluded that it would be better for her to have this trust deed and note than to purchase contracts of the cabin sites; that the land which was put up as security was worth from $2,000 to $2,500 an acre; that the deal was a marvelous deal for her and absolutely the best that she could secure; that he had gone over it thoroughly and had discussed it with Mr. Lind, and that Mr. Lind had given it his approval; that plaintiff might place absolute reliance in his recommen-

dation because defendant company was back of him; that Reginal Spears, the maker of the note and trust deed, was thoroughly reliable in a financial way; that Spears had fulfilled other contracts to pay money; that Block had such confidence in his reliability that he, Block, would guarantee the note; that the proposed trade was an excellent one for her.

Relying upon these and other similar representations made by Roberts and Block, all of which were by the findings found to be false and untrue and made for the purpose of defrauding plaintiff, plaintiff agreed to accept the note and trust deed in place of the cabin site contracts. Some time between September 15th and 20th, the exact date not appearing, Roberts terminated his employment as salesman for defendant. Plaintiff was not informed of this change in Roberts' relation with defendant, but continued with the negotiations for this exchange until it was fully consummated in the belief that Roberts was at all times the agent and in the employ of defendant. Neither Roberts nor defendant gave her any information to the contrary. While the exchange was finally consummated after the date Roberts severed his relations with defendant, the evidence justifies the inference that the negotiations were under way when Roberts ceased his employment with defendant. Not until November 4, 1927, did defendant request of the state real estate commission the cancellation of Roberts' license as a salesman in its employ. Under these circumstances it was clearly the duty of defendant to have notified plaintiff of the fact that Roberts was no longer a salesman in its employ, if it would be relieved of responsibility for Roberts' conduct in continuing negotiations for an exchange of her property. Without such information plaintiff was justified in continuing to deal with him as the ostensible agent of defendant, after he ceased to be in fact the duly authorized agent. (Civ. Code, secs. 2317 and 2318.)

If circumstances ever justified the application of the rule: " . . . that the acts of an agent after his authority has been revoked bind a principal as against third persons, who, in the absence of notice of the revocation of the agent's authority, rely upon its continued existence", those appearing in the instant case do. (21 R. C. L. 860; 2 Cor. Jur. 539). The above-quoted rule has been given support or applied in the following cases: *Quinn* v. *Dresbach*, 75 Cal.

159 [16 Pac. 762, 7 Am. St. Rep. 138]; *Swinnerton* v. *Argonaut L. & D. Co.*, 112 Cal. 375 [44 Pac. 719]; *Eddy* v. *American Amusement Co.*, 21 Cal. App. 487 [132 Pac. 83]; *Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417 [49 Pac. 559].

While it must be conceded that the court's finding as to Roberts' agency is not entirely accurate under the rules pertaining to findings of fact, the discrepancy is as to form rather than substance. Had the court found that at the outset of the transaction Roberts was the authorized agent of defendant, but during the latter part of the negotiations and at the time of the culmination of the deal he was the ostensible agent of defendant, this would have been more strictly in accordance with the evidence, but the conclusion of law that defendant was liable for the fraud of Roberts would have been the same. Ostensible authority furnished as secure a basis for plaintiff's recovery against defendant as actual authority.

Appellant urges that in other respects the findings are inconsistent and contradictory. Also, that the court failed to find upon certain material issues. While, as already indicated, the findings are far from model in form, and it may be conceded they contain seeming inconsistencies, we have concluded that these defects are not such as warrant a reversal of the judgment.

Appellant next urges that the court erred in allowing interest on the damages awarded from the date of the exchange. In support of this point it is contended that, inasmuch as defendant Meline Company had no knowledge of the particular transaction out of which the fraud and deceit arose and did not receive any of the benefits, interest on the award of damages is unwarranted. The only case cited by appellant in support of this contention is *Lightner Min. Co.* v. *Lane*, 161 Cal. 689 [120 Pac. 771, Ann. Cas. 1913C, 1093], from which is quoted a paragraph that contains language which supports appellant's position. The quoted language was used, however, in connection with a judgment declared by the court to be foundationed upon the conversion of chattels, wherein our Civil Code provides the rule of damages. Neither the case cited nor the language quoted has any application to a set of facts such as are here involved. Section 3288 of the Civil Code reads as follows:

"In an action for breach of an obligation not arising from contract, and in every case of oppression, *fraud,* or malice, interest may be given, in the discretion of the jury." Inasmuch as the action before us is one "not arising from contract" and is one based on fraud, it would clearly appear that it comes within the above-quoted section. The evidence and the findings of fact by the court, sitting as a jury, justify the exercise by the court of its discretion in allowing interest on the judgment.

Appellant also urges that the court erred in including in its judgment the items of $1119, the amount paid by plaintiff on the note given by her for commission; $90 escrow fee and $10 for title search. We think appellant's contention as to these three items is well taken. Under section 3333 of the Civil Code, which provides the measure of damages for the breach of an obligation not arising from contract, the measure of plaintiff's damage was the value of what she gave for the worthless note and trust deed. The value of her equity in the property she traded was, according to her own testimony, $13,500. Had she received this amount with the interest on the Spears' note, she would have had no cause of action for the commission and other items she paid. Having been made whole, as it were, on her deal by the judgment for the value of her equity and interest thereon, this would seem to be the full amount of the detriment suffered by her because the Spears' note and trust deed was not what Roberts represented it to be.

We do not discuss other points raised in the briefs, as we feel they do not affect the conclusions at which we have arrived.

The judgment will be modified by deducting therefrom the sum of $1219, being the total of the three items hereinabove referred to, and as so modified, the judgment is affirmed. The appeal from the order is dismissed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 12, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 17, 1935.