FRANCOIS LANG, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 102740–102758. Promulgated October 3, 1941.

*L. B. Brown, Esq.*, for the petitioners.
*Harry R. Horrow, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: David David-Weill; Esther Lazard Fould; Jean Lazard; Alphonse A. Lazard; Therese Lazard Thibault; Marie Louise Lazard; Christian Lazard; Elise Lazard Billaudot; Raymond Lazard; Jenny Cahn Raphael; Simone Lazard Petsche; Georgette Bertier Lazard; Isabelle Lang Gouin; Marguerite Cahn Raphael; Elisabeth Lazard Lang; Max Lazard; Marthe Bouwens de Boijen; and Robert Lazard.

OPINION.

MELLOTT: These proceedings, duly consolidated for hearing, involve deficiencies in income tax for the fiscal year beginning February 1, 1939, and ending January 31, 1940, in the aggregate amount of $70,839.61. After they were instituted and on May 22, 1940, petitioners paid the full amount of the various deficiencies to the collector of internal revenue and thereafter filed supplements to their petitions asking that it be determined that overpayments had been made.

The proceedings were submitted on a written stipulation of facts and documentary evidence. All of the facts are found to be as stipulated. For present purposes they may be summarized.

At all times herein mentioned the petitioners were nonresident alien individuals not engaged in trade or business within the United States and not having an office or place of business therein. Each of them filed an individual income tax return for the fiscal year with the collector of internal revenue for the district of Maryland on the basis of cash receipts and disbursements. Each return contained a brief history of the litigation, hereinafter set out more fully, together with a recitation of the share and amount received upon the judgment. None of the petitioners reported a taxable income, each return containing the following statement:

Said alien contends that no part of the sum so received is annual or periodical gain, profit or income or subject to taxation under the Internal Revenue Code. Said alien denies any obligation to file this return and does so only to avoid the assertion of liability to penalty for failure to do so.

Petitioners, or their predecessors in interest, held title as tenants in common to several thousand acres of land located in Kern County, California. The Anglo California National Bank of San Francisco (hereinafter referred to as the bank) for several years had been the agent of the owners of the lands and had in its possession powers of attorney in respect to them. Herbert Fleishhacker was the president of the bank. In May of 1915 the bank, acting under the powers of attorney, caused 110 acres of the land to be conveyed upon the receipt of $33,000. The land at that time had a market value of $260,000. In March of 1917 the bank and Fleishhacker, acting under the powers of attorney, sold 40 acres of the land for $13,500. This tract at that time had a market value of $40,000. The owners consented to the sales in reliance upon fraudulent representations made to them by the bank and Fleishhacker.

In 1931 an investigation was undertaken to determine whether the petitioners or their predecessors in interest had been defrauded by the bank and Fleishhacker. As a result of the investigation petitioners filed a bill of complaint in equity on January 31, 1933, in the

United States District Court for the Southern District of California against the bank, Fleishhacker, and other named individuals and corporations. The bill asked for a rescission of the sales, a recovery of the lands, and an accounting of the profits. The trial was begun in the early part of November 1937 and in the latter part of the same month a motion was granted by the court dismissing the proceeding as to all defendants other than the bank and Fleishhacker on the ground that the cause of action was barred by the statute of limitations. Thereupon the proceeding was changed to an action at law against the bank and Fleishhacker for damages for deceit and transferred to the law side of the court. A jury was waived and the trial proceeded.

On January 10, 1938, the court signed its findings of fact and conclusions of law. One of the findings recites that:

By reason of the fraudulent acts and conduct of the Bank and Fleishhacker * * * with respect to the * * * sale of the 110 acres on or about May 24, 1915, [the plaintiffs were damaged] in the amount of $227,000, representing the difference between the market value of said 110 acres on said date, $260,000, and the sum of $33,000 received therefor, together with interest on the said sum of $227,000 from the date of said sale; and, with respect to the * * * sale of 40 acres on or about March 22, 1917, the said plaintiffs had been damaged in the amount of $26,500, representing the difference between the market value of said 40 acres on said date, $40,000, and the sum of $13,500 received therefor, together with interest on the said sum of $26,500 from the date of said sale in 1917.

The court concluded that the plaintiffs were:

* * * entitled to judgment against [Fleishhacker and the Bank] in the sum of $253,500, together with interest from May 24, 1915, to date of judgment at the rate of seven percent (7%) per annum on the sum of Two Hundred Twenty Seven Thousand Dollars ($227,000) plus interest at the same rate from March 26, 1917, to date of judgment on the sum of Twenty-six Thousand Five Hundred Dollars ($26,500) and for their costs and disbursements in this action.

On January 11, 1938, judgment was entered in favor of the plaintiffs and against the bank and Fleishhacker "in the sum of $651,579.71, with costs taxed at $2,110.31."

The bank and Fleishhacker appealed to the Circuit Court of Appeals for the Ninth Circuit which affirmed the judgment of the lower court on September 7, 1939. The opinion, admitted in evidence in these proceedings, is reported in *Anglo California National Bank of San Francisco* v. *Lazard*, 106 Fed. (2d) 693. Petition for certiorari was denied by the United States Supreme Court on January 2, 1940.

On January 19, 1940, the full amount of the judgment, together with interest thereon in the sum of $92,644.93, or a total of $743,-925.60, exclusive of taxable costs, was received by the above named petitioners in satisfaction of the judgment.

The attorneys for the plaintiff were entitled under a contingent fee contract to 15 percent of any recovery. On January 19, 1940, petitioners paid to their attorneys the sum of $111,588.84. The interests of the petitioners in the judgment and the proportions of attorneys' fees, costs, etc., paid by them ranged from 1/120 to 23/100 and are set out in the stipulation of facts.

Between April 1, 1931, and January 1, 1939, the petitioners collectively expended sums totaling $150,000 in addition to sums for which recovery was had as taxable costs in the action. Of this amount, $76,500 was paid to Lazard Freres et Cie, for loan of the services of Etienne Lang, and to Lang for expenses incurred in the investigation of facts leading to the institution of the suits and in the preparation for trial. The balance of said amount was paid to various attorneys, investigators, engineers, etc., the largest amount, $30,000, being paid to the firm of Hanna & Morton, attorneys, as a retainer. No part of the sum of $150,000 has ever been claimed as a deduction in any income tax return filed by or on behalf of any of the petitioners or allowed by the Commissioner as a deduction in determining the income tax of any of them and no part of said amount was claimed by petitioners as deductions in their returns or allowed by the Commissioner as deductions in arriving at the deficiencies asserted in these proceedings. The Commissioner does not waive any right to disallow any part of said $150,000 as a deduction by reason of the provisions of section 215 (a) of the Internal Revenue Code, nor does he concede that any part of that amount is allowable as a deduction or excludible from gross income.

Nine of the petitioners were determined by the respondent to have had gross income for the taxable period of more than $21,600 and ten of them were determined to have had gross income not in excess of $21,600. Those in the group receiving gross income in excess of $21,600 were allowed deductions of their aliquot parts of the legal fee to the extent that it was properly allocable to gross income, while those in the group receiving less than that amount were not allowed any deductions for legal fees. A typical "Explanation of Adjustments" as to those within the first group is contained in the proceeding David David-Weill, Docket No. 102741. It reads as follows:

(a) It is held that the amount of $743,925.60, received on January 19, 1940 as a result of a judgment obtained by you and several other plaintiffs against The Anglo California National Bank of San Francisco, et al., included interest of $490,425.60, which constitutes fixed or determinable annual or periodical income taxable under the provisions of section 211 of the Internal Revenue Code. Your share of this interest was 23% of $490,425.60, or $112,797.89.

(b) An amount of $111,588.84, representing 15% of $743,925.60, was paid to your attorneys as a legal fee in connection with the judgment referred to in

(a) above. Inasmuch as your gross income from sources within the United States was more than $21,600.00, you are entitled to a deduction of your share of the legal fee to the extent that it is properly allocable to said gross income in accordance with the provisions of section 211 (c) of the Internal Revenue Code.

The amount taxable as interest, $490,425.60, represents 65.924% of the total amount of $743,925.60 received. The allowable deduction for legal fee is therefore $65.924% of $111,588.84, or $73,563.83. Your share of this deduction is 23% of $73,563.83, or $16,919.68.

A typical "Explanation of Adjustment" as to those in the second group is contained in the proceeding of Max Lazard, Docket No. 102756, reading as follows:

(a) It is held that the amount of $743,925.60 received on January 19, 1940, as a result of a judgment obtained by you and several other plaintiffs against The Anglo California National Bank of San Francisco, et al., included interest of $490,425.60, which constitutes fixed or determinable annual or periodical income taxable under the provisions of section 211 (a) (1) (A) of the Internal Revenue Code. Your share of this interest was 1/30 of $490,425.60, or $16,347.52.

The petitions in the second group of cases allege that the Commissioner erred in treating $490,425.60 of the sum of $746,354.95 as annual or periodical gain, profit, or income, within the meaning of section 211, subsection (a) (1), of the Internal Revenue Code and in treating $281,588.84 (now conceded to be $261,588.84) of the said sum as gain, profit, or income of any kind within the meaning of said section. The petitions in the first group of cases contain the same allegations of error and in addition charge that the respondent erred in failing to deduct the aliquot part paid to the attorneys for their services in the action in determining the amount upon which the petitioner should be taxed under section 211, subsection (c), of the Internal Revenue Code contrary to the provisions of section 43 of the code. By amendment to the petitions the last charge is changed to one charging that the Commissioner erred in failing to deduct the amount paid by each petitioner in connection with the preliminary investigation and preparation for trial, the total amount paid by all being the $150,000 above referred to. Upon brief the last charge is abandoned, petitioners now contending that the $150,000 should be excluded from gross income. They also contend that the $111,588.84 paid to the attorneys should be excluded, rather than deducted, from gross income.

The parties discuss upon brief the following questions: (1)—(a) Was the amount of $398,079.71 received by petitioners interest, or damages measured by interest? (b) If it was not received as damages, was it received "from sources within the United States as interest" within the purview of section 211 (a) (1) (A) of the Inter-

nal Revenue Code?[2] (c) Should section 211 (a) (1) (A) be construed as requiring, under the doctrine *ejusdem generis*, not only that the interest be received from sources within the United States as interest, but that it also be "fixed or determinable" and "annual or periodical" and, if so, does the amount in issue meet this requirement? (d) If the amount was not received as interest, is it nevertheless taxable under section 211 (a), *supra*, as "annual or periodical gains, profits and income?" (2)—(a) Was the amount of $92,644.93 received by petitioners "from sources within the United States as interest?" (b) If so, was it paid upon an interest-bearing obligation? (c) If (a) and (b) are answered in the negative, was the amount in issue nevertheless taxable under section 211 (a), *supra*, as "annual or periodical gains, profits and income?" (3)—(a) Did the amount of $261,588.84 constitute "gains, profits and income" of any kind? (b) Should $150,000 of it be excluded from gross income? and (c) Should the $111,588.84 have been excluded rather than deducted from gross income?

Several rather persuasive circumstances support the respondent's contention that the $398,079.71 was received by petitioners as interest. The finding and conclusion of the District Court so characterized it. Moreover counsel representing petitioners in the court action seem to have insisted that "interest" was due their clients. In a hearing before the District Court upon the motion of Fleishhacker to vacate and alter the judgment and for a new trial, in connection with the charge that "under the circumstances * * * the awarding of interest as a part of the damages against * * * Fleishhacker was * * * an abuse of discretion", counsel for Fleishhacker pointed out that there had never been any pleading mentioning interest or any prayer for it and said: "* * * the only possible invocation of your Honor's discretion was the mere statement, the casual statement by counsel at the close of the trial that interest was in the discretion of your Honor." Counsel for plaintiffs responded that he did not understand why he had been referred to as having made a casual request for interest and pointed out that he had said,

[2] SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS.
    (a) NO UNITED STATES BUSINESS OR OFFICE.—
    (1) GENERAL RULE.—
    (A) IMPOSITION OF TAX.—There shall be levied, collected and paid for each taxable year in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 10 per centum of such amount, except that such rate shall be reduced, in the case of a resident of a contiguous country, to such rate (not less than 5 per centum) as may be provided by treaty with such country.

not once but twice, while discussing the measure of damages "that your Honor must fix the value of the property, together with interest in the discretion of your Honor. \* \* \* Under the authorities, there could be no real controversy as to our right to receive interest." In ruling on this phase the court said: "So far as interest is concerned that is a matter of discretion. I think the discretion was judiciously exercised." In the assignment of errors upon appeal to the Circuit Court of Appeals it was charged that:

The court erred in including any interest as a part of the damages awarded plaintiffs, because such interest had not been prayed for, nor alleged as part of the damages, nor the discretion of the court in that regard invoked until plaintiff's so-called "amendment to conform to proof" filed after oral decision pursuant to ex parte order made after oral decision, and the awarding thereof was not within the issues and plaintiffs were not entitled to such interest, either absolutely or as a matter of the court's sound discretion.

In passing upon this charge of error the Circuit Court of Appeals said:

Appellants' point four is that the judgment is erroneous in including approximately $400,000 in interest as part of the total damages. Under this point, appellants make two contentions. The first is that the discretion of the trial court was never properly invoked because it was not until the amendment to conform to proof was there any allegation before the court claiming interest; that in the amendment to conform to proof there was no prayer for interest as the allegations claiming interest were only contained in the ad damnum clause. The court did not err in allowing the amendment to conform to proof. The discretion of the trial court was properly invoked for the court could grant relief embraced within the issues including a judgment for interest though not prayed for. *Perry* v. *Magneson*, 207 Cal. 617, 279 P. 650; *Cassacia* v. *Phoenix Ins. Co.*, 28 Cal. 628.

The second contention under Appellants' fourth point is that the allowance of interest was an abuse of discretion. Appellees contend that the allowance of interest was not discretionary but a matter of right. We assume, however, that the recovery of interest in the case at bar was discretionary. See Cal. Civ. Code, Sec. 3288. Compare *Boss* v. *Silent Drama Syndicate*, 82 Cal. App. 109, 255 P. 225. *Mary Pickford Co.* v. *Bayley Bros.*, Cal. App., 68 P. 2d 239, affirmed 12 Cal. 2d 501, 86 P. 2d 102, 114. The discretion was not abused. See *Isaacs* v. *Frank Meline Co.*, 2 Cal. App. 2d 341, 37 P. 2d 1045. Compare *Wilkinson* v. *Singh*, 93 Cal. App. 337, 269 P. 705.

Respondent argues that the sum of $253,500 included in the judgment represented the amount of which petitioners and their predecessors in interest had been defrauded, the balance being interest. He says: They had been "deprived of the use of said $253,500 from the dates of sales to the date of judgment, and the court having found that Fleishhacker had obtained various and sundry awards [rewards] as a result of the sales for grossly inadequate prices, granted petitioners interest totaling $398,079.71." Petitioners urge that the so-called interest was not conventional interest nor interest provided by

statute such as was considered in *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84; that it was merely an element of the damages awarded to them for the wrong done; that the use of a fixed rate per annum (7%) was merely a convenient method of measuring one of the factors of damage; and that the $398,079.71 was not awarded as a separable item of interest.

Notwithstanding the several circumstances which tend to support respondent's contention, we do not believe that the amount in issue was interest. Clearly, it was not interest in "the usual, ordinary and everyday meaning of the term." *Old Colony Railroad Co.* v. *Commissioner*, 284 U. S. 552. Its use in a tax statute might be sufficient to "incline the scale to the construction most favorable to the taxpayer", *Old Colony Railroad Co.* v. *Commissioner, supra*, though we prefer to 'rest our decision on other grounds. It was not interest provided for by statute, either Federal or state. Respondent argues that it was authorized by the California statute. The decision by the District Court and a cursory reading of the opinion by the Circuit Court of Appeals might seem to support this contention; but we do not believe that they do so. The state statute is not controlling, *Morgan* v. *Commissioner*, 309 U. S. 78, and, even if it were, the amount was not added as interest. The action was in tort. If the plaintiffs prevailed, the court's jurisdiction did not extend beyond entering a money judgment. It did so, awarding damages, as shown in its judgment, "in the sum of $651,579.71." Its findings indicate the method by which the damages were computed. This was perhaps wholly unnecessary, though it tends to establish the "reasonableness" of the award. The opinion of the Circuit Court of Appeals indicates that this was the view which it took. It referred to the court "including [in the judgment] approximately $400,000 in interest *as part of the total damages.*" (Italics ours.) The inclusion was proper in order to compensate the plaintiffs for the loss which they had sustained; but the mere fact that the court referred to the state statute under which interest could be allowed does not have the effect of making interest of a portion of the damages.

The conclusion which we have reached accords with the rationale of such cases as *Seaboard Air Line Railway Co.* v. *United States*, 261 U. S. 299; *Brooks-Scanlon Corporation* v. *United States*, 265 U. S. 106; and *Phelps* v. *United States*, 274 U. S. 341; with our decisions in *Consorzio Venesiano di Armamento e Navigazione*, 21 B. T. A. 984; *Joseph W. Bettendorf*, 3 B. T. A. 378; and *N. V. Koninklijke Hollandische Lloyd*, 34 B. T. A. 830; and is also supported by the rule found to be applicable in connection with so-called "interest" upon awards in condemnation proceedings. Cf. *Seaside Improve-*

*ment Co.* v. *Commissioner*, 105 Fed. (2d) 990; certiorari denied, 308 U. S. 618; *Estate of Edgar S. Appleby*, 41 B. T. A. 18 (on appeal C. C. A., 2d Cir.).

The cases cited by the respondent have not been ignored. Many of them, as he recognizes, involved the basic question of whether amounts received represented a recovery for loss of profits and constituted income or whether they were returns of capital. *Miller* v. *Hocking Glass Co.*, 80 Fed. (2d) 436; *Armstrong Knitting Mills*, 19 B. T. A. 318; *Liebes & Co.* v. *Commissioner*, 90 Fed. (2d) 932. Petitioners do not contend that the sum here in issue was a return of capital (except to the extent claimed under the third question, which will be discussed later). Their contention is merely that the amount received is not the particular kind of income which Congress has seen fit to tax to nonresident aliens. The cases are therefore not particularly helpful. In other cases cited by respondent, for example, *Charles S. Davis, Trustee*, 35 B. T. A. 1001, the Board was not required to determine whether the so-called "interest" was really interest, or damages measured by interest. It was wholly immaterial which it was; for it was taxable in either event. *Theodate Pope Riddle*, 27 B. T. A. 1339, and *Henri Chouteau*, 22 B. T. A. 850, involved interest upon an award or judgment from the date it was entered until the date of payment. They are respectable authority in support of respondent's contention with reference to the $92,644.93, which will be considered under the second question; but they furnish slight aid in determining the taxability, under section 211, *supra*, of the $398,079.71.

The conclusion is inescapable and it is held that the $398,079.71 was damages rather than interest. It is unnecessary to decide questions 1 (b) and 1 (c) set out above; so we pass at once to 1 (d)—Is the amount taxable under section 211 (a) as "other fixed or determinable annual or periodical gains, profits and income?" Respondent refers to the quoted language as a "catch-all", his contention apparently being that Congress intended—as indicated by the legislative history which he sets out [3]—to include all of the gains, profits and income of a nonresident alien, except capital gains. We can not spell out of the language used any such result even if Congress had the intent which respondent contends that it had. The words "fixed or determinable annual or periodical" can not be ignored or expunged from the statute by construction. They qualify and limit the remainder of the sentence. Therefore it must be shown that the gains, profits, and income were both fixed or determinable and annual or periodical.

Respondent argues that the amount in issue was "fixed" because it was paid in an amount "definitely predetermined"; that it was "de-

---

[3] H. Rept. No. 2475, 74th Cong., 2d sess.; S. Rept. No. 2156, 74th Cong., 2d sess.

terminable" because there was a basis of calculation by which it could be ascertained; that it was computed upon an "annual" basis; and that it was "periodical" in the sense that it was "due in respect of a specific period of time." He also calls attention to the fact that the statute is in the disjunctive rather than in the conjunctive. These arguments have been considered. Though not conclusive upon us, it is not without significance that the department has apparently taken the view that the phrase "annual or periodical income" connotes income which is paid in more than one installment. Cf. sec. 19.143-2 of Regulations 103. In O. D. 907, C. B. 1921-1, p. 232, it was held that "the commission paid on account of a single transaction is not fixed or determinable annual or periodical income", and in S. M. 975, C. B. 1, p. 184, it was held that amounts won in horse races in the United States by horses belonging to a nonresident individual did not constitute "fixed or determinable annual or periodical income" so as to be subject to the withholding provisions of the revenue act. The rulings were recently reviewed in G. C. M. 21575, C. B. 1939-2, p. 172, and opinion was expressed that prizes awarded by an institute to nonresident artists during the years 1936, 1937, and 1938 did "not come within the meaning of the term 'fixed or determinable annual or periodical income.'"

We express no opinion as to the correctness of the rulings. Whether they were right or wrong, we believe that under the facts presently stipulated the amount in issue was not received by the petitioners as fixed or determinable annual or periodical income. We therefore hold that said amount should not have been included in computing their income under section 211 (a) (1), *supra.*

A different situation exists as to the $92,644.93. Petitioners admit it was received as interest on their judgment under R. S. 966 (28 U. S. C. A. 811), making applicable Article XX, section 22, of the Constitution of California. They contend, however, that the judgment was not an "interest-bearing obligation", as such term is used in section 119 (a) (1)[4] of the Internal Revenue Code because it was subject to reversal—if the defendants in the District Court action had filed in the Supreme Court of the United States a petition for a rehearing of their petition for certiorari and if it had been granted—and also that the interest upon the judgment was not received by them as "annual or periodical" income. We agree with neither of these contentions. The mere fact that the judgment debtors had not exhausted all of their remedies—if that were a fact—does not prevent the judgment from

---

[4] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

(a) GROSS INCOME FROM SOURCES IN UNITED STATES.—The following items of gross income shall be treated as income from sources within the United States:

(1) INTEREST.—Interest from the United States, any Territory, any political subdivision of a Territory, or the District of Columbia, and interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise * * *.

being an *obligation.* Certainly it was an obligation until and unless it was set aside. It was "interest-bearing" and the interest was paid. "An obligation upon which by express statutory direction interest must be paid is an interest-bearing obligation." *Helvering* v. *Stockholms Enskilda Bank, supra.* Cf. *Morley* v. *Lake Shore Railway Co.,* 146 U. S. 162; *Theodate Pope Riddle, supra; Henri Chouteau, supra.* The interest was also fixed or determinable. Petitioners apparently do not contend that it was not. They contend it was not "annual or periodical" because it was not of a recurrent character or paid in installments from time to time. It will be noted the statute does not require that the income be both annual and periodical. Under the stipulated facts the interest upon the judgment was required to be, and was, computed upon an annual basis. When received, therefore, it was fixed or determinable, annual income. Thus it comes within the ambit of the statute. It follows that the respondent did not err in including this amount in petitioners' gross income.

The remaining questions involve the two amounts aggregating $261,588.84 ($150,000 preliminary expense and $111,588.84 attorneys' fees). Respondent included both of them in determining the deficiencies. He allowed the petitioners having gross incomes in excess of $21,600 from sources within the United States, deductions for attorneys' fees properly allocable to their respective gross incomes in accordance with the provisions of section 211 (c) of the Internal Revenue Code.[5] Under our holding apparently none of the petitioners had gross income in excess of $21,600. If so, no deduction for the attorneys' fees can be allowed. Petitioners have abandoned their contention that they are entitled to deduct their aliquot parts of the $150,000 from their gross incomes. This contention, if not abandoned, could not have been sustained; for petitioners, in addition to the fact that their respective gross incomes were not in excess of $21,600, had never made any claim for such deductions in their returns—a condition precedent to the allowance of a deduction by a nonresident alien, *Nicholas Roerich,* 38 B. T. A. 567; affd., 115 Fed. (2d) 39.

[5] (c) NO UNITED STATES BUSINESS OR OFFICE AND GROSS INCOME OF MORE THAN $21,-600.—A nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein who has a gross income for any taxable year of more than $21,600 from the sources specified in subsection (a) (1), shall be taxable without regard to the provisions of subsection (a) (1), except that—

(1) The gross income shall include only income from the sources specified in subsection (a) (1);

(2) The deductions (other than the so-called "charitable deduction" provided in section 213 (c) shall be allowed only if and to the extent that they are properly allocable to the gross income from the sources specified in subsection (a) (1);

(3) The aggregate of the normal and surtax under sections 11 and 12 shall, in no case, be less than 10 per centum of the gross income from the sources specified in subsection (a) (1) * * *.

Petitioners' contention that the $261,588.84 should not have been included in gross income is partially covered in our discussion upon the first issue. In so far as this amount forms a part of, or is included in, the $398,079.71 or the $651,579.71, we agree with petitioners. We do not agree with their contention, however, that said amount "should be treated as a reimbursement for the expenditures concurrently payable by them to their attorneys." They were, on the cash receipts and disbursements basis. Out of the amount received they, in the language of the stipulation, "paid to said attorneys, for their services in said proceedings, the sum of $111,588.84." In other words, they paid their attorneys out of the amount which they received. The Commissioner committed no error in determining that the petitioners having gross incomes in excess of $21,600 were entitled to deductions of their share of the legal fee to the extent that it was properly allocable to gross income in accordance with the provisions of section 211 (c), nor did he err in disallowing all deductions to those having an income of less than $21,600.

It is apparent we are approving, only in part, the deficiencies determined by the respondent. Recomputations must be made in accordance with the views herein expressed. Whether a finding should also be made with reference to overpayments is not clear. The parties will no doubt be able to agree; for they have stipulated that the amounts of the various deficiencies have "been received by the Collector of Internal Revenue, were treated by him as deposits, and were recorded on his books as items deposited in suspense accounts which are unidentified."

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

TURNER and KERN dissent.