Filed 2/17/15  Akopyan v. Karamanoukian CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| VICTORIA AKOPYAN, | B252062 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC415379) |
| v. | |
| ARA KARAMANOUKIAN, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Deidre Hill, Judge.  Affirmed.

Law Office of Lawrence P. House and Lawrence P. House for Plaintiff and Appellant.

Ervin Cohen & Jessup, Karina B. Sterman and Rodney C. Lee for Defendant and Respondent.

_____

This is the second time this breach of contract action has been before us. In *Akopyan v. Karamanoukian* (June 25, 2012, B233224) [nonpub. opn.] (*Akopyan I*) we reversed the judgment entered after the trial court had granted summary adjudication in favor of Victoria Akopyan on the contract claim and a motion for judgment on the pleadings against her on her cause of action for declaratory relief. After further proceedings on remand, limited to the issue whether a letter to a party's attorney was sufficient to put that party on notice he was required to perform a certain condition, the trial court granted summary judgment in favor of Ara Karamanoukian on the contract claim and entered judgment in his favor. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

1. *The First Action, the Settlement Agreement and the Action for Breach of the Settlement Agreement*

In July 2006 Karamanoukian and his business partner, Alan Baronian, purchased a majority interest in a corporation that operated an adult daycare center from Akopyan, its sole shareholder. Immediately after the purchase a dispute arose between Karamanoukian and Baronian, on one hand, and Akopyan and her then-boyfriend Hovik Krboyan, on the other hand. In August 2006 Akopyan filed an action against Karamanoukian, Baronian and others; Karamanoukian and Baronian filed a cross-complaint against Akopyan and Krboyan.

In February 2008 the parties settled the action. The settlement agreement did not require the payment of money at that time. Rather, because the parties believed McGuire Woods LLP, the law firm representing Karamanoukian and Baronian in connection with the stock purchase, had committed misconduct that provoked the underlying dispute, the settlement agreement provided Karamanoukian and Baronian (or either one of them alone) would pursue a legal malpractice action against McGuire Woods and share half of

_____

[1] Portions of the factual summary have been taken from *Akopyan I, supra*, B233224.

any recovery with Akopyan.[2] With respect to the costs and fees associated with the malpractice action, the settlement agreement provided, "[T]he first $50,000 [] in fees and/or costs of bringing and prosecuting the anticipated malpractice action shall be born[e] equally 50/50 by Hovik Krboyan, on the one hand, and Karamanoukian . . . , on the other hand. Should the fees and/or costs of bringing and prosecuting the [a]nticipated [m]alpractice [a]ction exceed $50,000, Hovik Krboyan shall be solely responsible for paying such fees and/or costs. Any attorney(s) engaged for the purpose of prosecuting the [a]nticipated [m]alpractice [a]ction shall be instructed to [] bill the parties accordingly."

The settlement agreement also provided Karamanoukian would pay Akopyan $100,000 if the malpractice action was not "initiated or prosecuted" to judgment, settlement or award unless one of four exceptions was met: "(1) after diligent search, no attorney can be found to take on the [m]alpractice [a]ction; (2) the prosecuting attorney, after initiating the [m]alpractice [a]ction, elects to withdraw from the action; (3) this Agreement is not fully executed until after the statute of limitations has expired; or (4) Hovik Krboyan fails to pay his share of the costs/fees associated with the [m]alpractice [a]ction."

The malpractice action was not filed before the limitations period for the claims had expired. On June 9, 2009 Akopyan filed a complaint for breach of contract and declaratory relief against Karamanoukian, alleging he was required under the terms of the settlement agreement to pay her $100,000 because he had failed to timely initiate the malpractice action.

2. *The Cross-motions for Summary Adjudication and Summary Judgment*

In September 2010 Akopyan moved in the alternative for summary judgment or summary adjudication. In October 2010 Karamanoukian filed a cross-motion for summary judgment or summary adjudication, arguing he was excused from paying the

---

2 Because Baronian was dismissed on December 3, 2009, for simplicity we will not refer to him again.

$100,000 because Krboyan had refused to pay his share of the retainer fee required to initiate the malpractice action. In a supporting declaration Karamanoukian explained he had consulted with four attorneys before finding one, Art Kalantarian, who would take the case. Although Kalantarian had agreed to represent Karamanoukian, he required a $50,000 retainer and execution of an engagement agreement by both Karamanoukian and Krboyan. Karamanoukian called Krboyan five or six times in an attempt to collect Krboyan's 50 percent share of the retainer and obtain his signature, but Krboyan never answered the telephone or attempted to call Karamanoukian back. Because Karamanoukian could not reach Krboyan and the statute of limitation was going to expire soon, Karamanoukian's attorney sent a letter to Ali Taheripour, the attorney who had represented Krboyan in the underlying action, and Lawrence House, counsel for Akopyan, requesting they contact Krboyan.

The letter dated June 25, 2008 stated, "This letter is to inform you that Mr. Karamanoukian has been trying to contact Mr. Krboyan for the past three to four weeks regarding the payment and retention of an attorney to commence the [a]nticipated [m]alpractice [a]ction. However, as of the date of this letter, Mr. Krboyan has not returned any of Mr. Karamanoukian's phone calls. [¶] Accordingly, we are requesting that one of you contact Mr. Krboyan and inform him that the retainer agreement and payment must be received by Mr. Karamanoukian in a sufficient amount of time to allow the complaint to be filed before the expiration of the statute of limitations. . . . By our estimation, the controlling statute of limitations will expire on July 5, 2008. Therefore, Mr. Krboyan will most likely need to pay his half of the $50,000 retainer and sign the fee agreement by no later than June 30, 2008." In his declaration Karamanoukian stated Krboyan had called him a few days after the letter was sent and told him he did not know Kalantarian and would not sign the engagement agreement or pay any share of the retainer.

In opposition to Karamanoukian's motion Akopyan argued the settlement agreement only required Krboyan to pay 50 percent of legal fees billed after the fees had been incurred, not to advance any portion of fees required to initiate the action, which,

4

Akopyan contended, was Karamanoukian's obligation. Akopyan further argued, supported by declarations from Krboyan and Taheripour, that Krboyan had never received any telephone calls from Karamanoukian; Krboyan had not been told about the June 25, 2008 letter to Taheripour because Taheripour no longer represented Krboyan and did not know how to contact him;[3] Krboyan did not speak to Karamanoukian after the letter had been sent; and it was suspicious that Karamanoukian had failed to attach the proposed engagement agreement from Kalantarian to his moving papers or produce it in discovery.

After a hearing on February 9, 2011 the trial court denied Akopyan's motion for summary judgment but granted summary adjudication in favor of Akopyan on the cause of action for breach of contract.[4] The court explained, "The settlement agreement . . . has nothing in there that requires anyone to advance fees. It's an agreement where they are going to split the fees as they are . . . billed, essentially, that the parties' settlement agreement obligates the defendants to either commence the anticipated malpractice action or pay the $100,000 within 30 days. Well, they did not commence the action. . . . The agreement itself did not obligate Hovik, Mr. Krboyan to advance costs or to sign any representation agreement." Judgment was entered in favor of Akopyan on February 22, 2011.

---

3 Taheripour's declaration stated, "Once the Underlying Action was resolved and the Settlement Agreement was signed, my Firm ceased its representation of Krboyan" and "[S]ince the Underlying Action was resolved and the Settlement Agreement was signed in February 2008, neither I nor my law firm have represented Mr. Krboyan, nor have we acted on his behalf since that time." Sometime after Taheripour's representation had ceased, he was told Krboyan had moved out of state; and Taheripour no longer had the ability to contact him.

4 With respect to the claim for declaratory relief, the court treated Karamanoukian's motion as a motion for judgment on the pleadings and granted it. The parties did not dispute the trial court's ruling on that point in *Akopyan I, supra*, B233224.

### 3. *Our Decision in <u>Akopyan I</u>*

We reversed the trial court's order granting summary adjudication in favor of Akopyan and the corresponding judgment in her favor. Acknowledging the settlement agreement did not address the precise situation at issue, we held it was unreasonable to conclude the parties did not intend Krboyan to be responsible for 50 percent of a retainer required to initiate the action and an implied term to that effect was required to make the contract reasonable in light of the general intent underlying its express provisions. We also held the record belied Akopyan's alternative argument that, even if Karamanoukian's interpretation of the settlement agreement was correct, he was not excused from paying the $100,000 penalty because there was no evidence Krboyan was aware of Karamanoukian's attempts to contact him before the statute of limitations on the malpractice claim had expired: "Karamanoukian presented a declaration asserting he had spoken with Krboyan a few days after the June 25, 2008 letter was sent by his counsel and Krboyan refused to pay his share of the retainer." (*Akopyan I*, *supra*, B233224.)

Although Karamanoukian's declaration was sufficient to defeat Akopyan's motion for summary judgment, we held it was not sufficient to warrant summary adjudication in Karamanoukian's favor because it was contradicted by Krboyan's declaration stating the conversation did not occur. We observed, "[T]hat factual dispute may not be material if the June 25, 2008 letter from Karamanoukian's attorney to Krboyan's former attorney, which no one disagrees was, in fact, sent and received, was sufficient notice to Krboyan under principles of agency. (See Civ. Code, §§ 2317 [ostensible authority], 2355 [means of termination of agency].)"[5] (*Akopyan I*, *supra*, B233224.) Because neither party had addressed that issue on appeal, and we were unable to determine whether additional evidence relating to it existed or if the parties had had an adequate opportunity to present the evidence or conduct discovery on the issue, we remanded the matter to the trial court to resolve it either by further motion practice or at trial.

---

[5] Statutory references are to the Civil Code unless otherwise indicated.

4. *The Cross-motions for Summary Judgment After Remand*

After the matter was remanded, Akopyan and Karamanoukian filed cross-motions for summary judgment.[6] Akopyan renewed her argument that Karamanoukian was obligated to pay her $100,000 because he had failed to initiate the malpractice action. In addition, she asserted the June 25, 2008 letter from Karamanoukian's counsel to Taheripour was not sufficient notice to Krboyan because Taheripour's representation of Krboyan had ended with the settlement and dismissal of the underlying action in February 2008. In his motion Karamanoukian contended he had not been informed the agency relationship between Taheripour and Krboyan had ceased and argued execution of the settlement agreement did not fully resolve the issues between the parties in the underlying dispute because it required further action, for example, the payment by Krboyan of his share of attorney fees. In a supporting declaration Karamanoukian stated he had initially tried to contact Krboyan directly because he did not want to incur the legal fees to have his attorneys do so.

The trial court denied Akopyan's motion, describing it as an "improper attempt to circumvent the Court of Appeal's ruling." The court granted Karamanoukian's motion, finding the June 2008 letter to Taheripour was sufficient notice to Krboyan to trigger the condition he pay 50 percent of the retainer required to commence the action. The court explained Karamanoukian's declaration established he was unaware Krboyan had moved out of state and was no longer represented by Taheripour when the letter was sent, learning it for the first time when Krboyan's deposition was taken in the instant action. The court rejected Akopyan's argument the agency relationship between Krboyan and Taheripour had terminated by virtue of settlement of the underlying action: "Plaintiff presents no evidence to demonstrate that the attorney/client relationship ceased as between [Krboyan] and his attorney just because the underlying action was settled in February 2008. Indeed, the settlement agreement contained conditions precedent, duties,

6    Following our reversal of the judgment, Karamanoukian successfully moved to disqualify the original trial judge (Hon. Mark Mooney) under Code of Civil Procedure section 170.6. The matter was reassigned to Judge Deidre Hill.

7

and obligations of [Krboyan] even though he was not a party to the underlying lawsuit. Just because the underlying lawsuit settled this does not mean that the subject matter of the settlement extinguished. Duties were still imposed on parties to the settlement agreement, and no evidence exists to show that [Krboyan] was no longer represented by counsel as of the date the June 25, 2008 letter was sent to his then-attorney. [¶] Furthermore, as aptly pointed out by [Karamanoukian] in his Reply brief[,] the letter constitutes at least constructive notice since [Krboyan's] attorney was at least his ostensible agent. Additionally, as to [Karamanoukian], who had no knowledge of notice of the termination of the attorney/client relationship, the letter is still good notice to [Krboyan] because it was [Krboyan's] duty to inform [Karamanoukian] that [Krboyan] no longer had an attorney, especially since conditions existed in the settlement agreement that were not yet fulfilled as between the parties."

## DISCUSSION

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 703; *Schachter*, at p. 618.)

2. *The Letter to Taheripour Was Sufficient Notice to Krboyan*

   a. *Governing law*

An agent is an individual who represents a principal in dealings with third persons. (See § 2295.) "[A]gency is either actual or ostensible." (§ 2298.) "An agency is actual when the agent is really employed by the principal." (§ 2299.) "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to

8

believe another to be his agent who is not really employed by him." (§ 2300; see *Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399 [ostensible agency is based on principles of estoppel].) "It is elementary that there are three requirements necessary before recovery may be had against a principal for the act of an ostensible agent. The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; such belief must be generated by some act or neglect of the principal sought to be charged; and the third person in relying on the agent's apparent authority must not be guilty of negligence." (*Associated Creditors' Agency*, at p. 399.)

Generally, "both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (§ 2332.) Consequently, "notice to an agent in course of a transaction is constructive notice to the principal, and it will not avail the latter to show that the agent failed to communicate to him what he was told." (*Watson v. Sutro* (1890) 86 Cal. 500, 523; see *Mabb v. Stewart* (1905) 147 Cal. 413, 421 ["letters sent to [plaintiff's] attorney must be treated as having been sent to her"].) "The basis for imputing knowledge to the principal is that the agent has a legal duty to disclose information obtained in the course of the agency and material to the subject matter of the agency, and the agent will be presumed to have fulfilled this duty." (*Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 534-535.)

"An agency is terminated, as to every person having notice thereof, by," among other ways, the expiration of its term, "[t]he extinction of its subject," or renunciation by the agent. (§ 2355, subds. (a), (b), (d); see *Boehm v. Spreckels* (1920) 183 Cal. 239, 248; see *Otis v. Winter Inv. Co.* (1934) 138 Cal.App. 682, 684 ["'[o]rdinarily, so long as the purpose of the agency has not been fulfilled, as originally contemplated, the agent's powers continue, unless he has definitely and finally failed in his attempt to accomplish that purpose'"].) Even if an agency has been terminated, the acts of the agent may bind the principal as to those individuals "'who, in the absence of notice of the revocation of the agent's authority, rely upon its continued existence . . . .'" (*Isaacs v. Frank Meline*

9

*Co.* (1934) 2 Cal.App.2d 341, 345 [broker bound by fraudulent acts of salesman when neither broker nor its salesman informed client that salesman was no longer employed by broker]; see *Siquig v. West Coast Pickle Co.* (1958) 161 Cal.App.2d 254, 257 [discharged agent for produce buyers "continued to be at least an ostensible agent" as to farmers who were not notified of discharge]; see generally Code, § 2356, subd. (b) [notwithstanding revocation by principal or death or incapacity of principal, "any bona fide transaction entered into with an agent by any person acting without actual knowledge of the revocation, death, or incapacity shall be binding upon the principal"].)

b. *Krboyan failed to provide Karamanoukian notice that the agency relationship with Taheripour had been terminated*

Akopyan contends the trial court erred in finding she had failed to present evidence the attorney-client relationship between Krboyan and Taheripour had terminated prior to June 25, 2008. She argues Taheripour's declaration established he and his firm ceased representing Krboyan after the settlement agreement was signed in February 2008—that is, the subject matter of the agency was extinguished when the underlying action was dismissed. (§ 2355, subd. (b).) We agree with the trial court that the ongoing responsibilities set forth in the settlement agreement—for example, that Krboyan would pay a portion of legal fees—vitiates the argument the subject matter of the representation was completed upon execution of the settlement agreement. (Cf. *Menzel v. Salka* (1960) 179 Cal.App.2d 612, 623 ["in the present case, the sale of the property was in escrow and thus the transaction was not completed when [seller's real estate agent] made his deal with [the buyer]"].)

To be sure, although not argued by Akopyan on appeal, it is possible the agency relationship was expressly terminated by Krboyan or Taheripour after the underlying action was dismissed. Taheripour's declaration is simply silent on the specific method of termination. Nevertheless, even if there was an express termination, Karamanoukian's declaration clearly established he was not notified Taheripour no longer represented Krboyan and thus notice to Taheripour was binding on Krboyan. (See § 2355 [agency terminated "as to every person having notice thereof"].) In his declaration

10

Karamanoukian explained he had initially tried to contact Krboyan on his own to avoid incurring legal fees. He only contacted his attorney after Krboyan had failed to respond to five or six telephone calls and the time to bring the malpractice action was running out. Karamanoukian unambiguously stated, "[Krboyan] never communicated to me or my lawyers that he was no longer represented by Ali Taheripour or the law firm of Mgdesyan & Taheripour. I only first became aware of the fact that [Krboyan] was no longer represented by Mgdesyan & Taheripour when I read [Krboyan's] and Mr. Taheripour's declarations submitted in support of [Akopyan's] Opposition to my Motion for Summary Judgment in this lawsuit." Akopyan's characterization of other language in the declaration as a "clear expression by [Karamanoukian] he knew that Mr. Taheripour was Krboyan's **former** attorney at the time he requested his current lawyer to contact the other lawyers in the Underlying Action" is simply inaccurate.[7]

Akopyan's suggestion the trial court's ruling "should be worrisome to any practicing litigation attorney" because, "[i]f all of the parties to the former litigation cannot be located, then must the attorney somehow give notice to the world" is unpersuasive hyperbole. Attorneys routinely include notice provisions in settlement agreements (and other documents) to avoid the issue that arose in this litigation. Moreover, in the absence of a notice provision (and especially if the agency relationship had been expressly terminated), it was Krboyan's responsibility, not his lawyer's, to exercise ordinary care to keep the parties informed as to how he could be reached while he still had active obligations under the terms of the settlement agreement. The consequences of Krboyan's failure to do so were properly borne by Krboyan and Akopyan, cross-defendants in the underlying action.

---

[7] Similarly without merit is Akopyan's argument that Karamanoukian's attorney's request that Akopyan's attorney also try to contact Krboyan is evidence Karamanoukian did in fact know the agency relationship had been terminated.

11

**DISPOSITION**

The judgment is affirmed. Ara Karamanoukian is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

ZELON, J.

12